# Wallace & Krebs *versus* Wainwright & Co.

1. A. being largely indebted, executed to B., an attorney for some of his creditors, an assignment of numerous claims and judgments "in payment" of their demands. *Held*, to be an assignment for the benefit of creditors, and, not having been recorded within thirty days, to be void as against a subsequent attaching-creditor.

2. A trust exists where the legal interest is in one person and the equitable interest in another.

3. The cases upon irregular assignments discussed by WOODWARD, J.

| 87 | 263 |
| 103 | 376 |
| 128 | 214 |
| 87 | 263 |
| 176 | 56 |
| 87 | 362 |
| 31 SC | 425 |

[Wallace *v.* Wainwright.]

June 5th 1878.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas of *Clearfield county:* Of May Term 1878, No. 112.

This was a feigned issue tried upon the plea of payment, to determine the right to certain claims and judgments originally the property of John Irvin and of John Irvin & Brothers.

The following facts appeared: John Irvin and John Irvin & Brothers were lumber dealers, in Clearfield county, and in June 1877, were largely in debt.    Wallace & Krebs, a firm of attorneys at Clearfield, represented a considerable number of creditors and were endeavoring to collect their claims.    Upon June 19th, the following instrument of writing was executed and delivered to them by John Irvin and by John Irvin & Brothers:

Curwensville, Pa., June 20, 1877.

"Whereas, John Irvin & Bros. are indebted to and owing B. F. Fullerton, George R. Price, Samuel C. Snyder, A. McGarvey, Wm. M. Cathcart, Horace Patchin, E. J. Molke, John B. Rafferty's estate, Daniel Hartsock, Wm. Lawhead, Bigler, Young & Reed, Joseph Bailey, Rachael Hartshorn, Brown, Roth & Jenks, Robert Mehaffey, John Porter, Jos. Patterson, John G. Lytle, George F. Wardle, C. H. Garden & Co., Cresswell, Lalanne & Co., Grabill & Co., A. Gates, S. J. Gates, Jackson McAbee, Snyder, Harris, Bassett & Co. (Book acc't), Taylor & Taylor, Reese, Owens & Co., Fitler & Co., certain sums not now definitely ascertained;

And whereas, John Irvin & Bros. are unable to satisfy the above-named creditors by a payment in full of their several demands in money;

Now, June 20, 1877, for value received we hereby assign, trans-
                        in payment
fer and set over to Wallace & Krebs, ~~in trust~~ of the above named creditors, the judgments and claims as per annexed schedule, all the right, title and interest of us, the undersigned members of the firm of John Irvin & Bros., and of John Irvin individually.

JOHN IRVIN & BROS.,
JOHN IRVIN."

To this instrument on June 20th was attached a schedule of the judgments and claims assigned.    The words "in trust" were originally written in the body of the instrument by the scrivener, but erased by him at the request of Mr. Krebs before execution, and the words "in payment" substituted.    Some of the creditors named in the instrument were neither present nor represented. Some assented subsequently to the arrangement, and some neither assented nor refused to assent.    On June 23d, Wainwright & Co. entered a judgment against John Irvin, Jared Irvin and James A. Irvin, the two latter being the "brothers of John Irvin & Brothers,

[Wallace *v.* Wainwright.]

and upon the same day issued an attachment-execution and attached the claims and judgments which had been assigned to Wallace & Krebs. The assignment was filed in the prothonotary's office on June 23d at the record of the attachment-execution, but was never recorded in the recorder's office. This issue was thereupon framed between Wainwright & Co., plaintiffs, and Wallace & Krebs, defendants, "to test the right of ownership in said judgments," and on the trial in November the foregoing facts appeared.

The court, Mayer, P. J., directed the jury to find for the plaintiffs, and reserved the following question of law: "whether or not the writing dated 20th of June 1877, executed and delivered by Irvin & Bros. and John Irvin to Wallace & Krebs, was an assignment in trust for the benefit of creditors."

On January 16th 1878 the court delivered the following opinion, entering judgment on the verdict:

"On the trial of this cause we instructed the jury to find a verdict for the plaintiffs, subject to the opinion of the court on the question of law reserved, whether the writing dated June 20th 1877, executed and delivered by Irvin & Brothers and John Irvin to Wallace & Krebs, was an assignment in trust for creditors. Being of opinion that this assignment constitutes an assignment in trust for the benefit of creditors, coming within the provisions of the Act of Assembly, and not having been recorded in the county within thirty days after the execution thereof, it is null and void as against the creditors of the assignors, and that the attachment of the plaintiffs must prevail. We, therefore, enter judgment in favor of the plaintiffs upon the verdict."

The defendants thereupon took this writ, assigning for error the charge of the court in directing a verdict for plaintiffs, and the entry of judgment in favor of plaintiffs upon the reserved point.

*Wallace & Krebs, p. p.*—The instrument of 20th June was a direct payment to the creditors named. The plaintiffs in error were not trustees, except as they were attorneys, and refused to receive the assignment as a trust. The assignment, therefore, was to the creditors themselves, and is not within the act regulating assignments for the benefit of creditors: Englebert *v.* Blanjot, 2 Whart. 240; Chaffees *v.* Risk, 12 Harris 433; Henderson's Appeal, 7 Casey 504. To affirm this judgment would be to hamper an attorney in the discharge of his duty and destroy his efficiency in a case that called for sudden action.

*Frank Fielding* and *J. B. McEnally*, for defendants in error.— A trust is where the legal estate is in one person and the equitable interest in another: Chaffees *v.* Risk, 12 Harris 432, and this was therefore clearly a trust for creditors. That it was said to be "in payment" is of no consequence so long as that was not the legal

effect of the act : Miners' Nat. Bank's Appeal, 7 P. F. Smith 193 ; Dreisbach *v.* Becker, 10 Casey 153 ; Murphy's Assignment, 2 Pitts. R. 271.

The assignment, therefore, was void because not recorded within thirty days.

Mr. Justice WOODWARD delivered the opinion of the court, October 21st 1878.

On the 20th of June 1877, an instrument was executed by John Irvin & Brothers and John Irvin individually, in order to secure certain designated creditors, some thirty in number, who held claims against the firm.    After reciting an indebtedness in sums not definitely ascertained, and the inability of the firm to satisfy the creditors by a payment in money, the instrument contained this concluding clause : "For value received, we hereby assign, transfer and set over to Wallace & Krebs, in payment of the above-named creditors, the judgments and claims as per annexed schedule, all the right, title and interest of us, the undersigned members of the firm of John Irvin & Brothers and of John Irvin individually." A schedule of the judgments and claims was attached to this assignment.    Some of the creditors named in the instrument were present and assented to the arrangement, some were represented by Messrs. Wallace & Krebs as counsel, and some were neither present nor represented.    Wainwright & Co., the plaintiffs below, held a judgment against Irvin & Brothers, upon which they issued this attachment, the defendants in the judgments and claims assigned being served as garnishees.    At the trial in the Common Pleas, the question as to the character of the paper executed by the Irvins was reserved, and the jury were instructed to render a verdict for the plaintiffs.    Upon the ground that the instrument constituted an assignment for the benefit of creditors, and, as such, that it had not been recorded within thirty days, the court afterwards entered judgment on the verdict.    This is alleged to have been error.

None of the Acts of Assembly relating to assignments for the benefit of creditors have required that they should be drawn in any specific form.    Such instruments were well known and in common use when the Act of the 24th March 1818 was passed.    And neither before nor after its passage was any particular collocation of words held necessary to give to a writing the effect of an assignment.    Since 1818 property transferred to one person to be employed, paid over or converted for the benefit of others, has been regarded as property held in trust within the operation of the statutes.    "Of course," Chief Justice LOWRIE said, in Fallon's Appeal, 6 Wright 235, "the courts cannot allow the law to be evaded by any sham departure from the general form of assignments ; and when the transaction is substantially an assignment for the benefit of creditors, involving no other important purpose that would be prejudiced by bringing it under the Act of 1818 (now 1836),

the substance rather than the form must be regarded." Judge LEWIS, in Chaffees v. Risk, 12 Harris 432, defined a trust as existing "where the legal estate is in one person, and the equitable interest in another." In Watson v. Bagaley, 2 Jones 164, a letter of attorney authorizing the collection and receipt of moneys, debts and goods, and the payment of the proceeds to creditors in a prescribed order of preference, although revocable before the execution of the power, was held to be, after execution, virtually an assignment for the benefit of creditors; and as such, Chief Justice GIBSON said, "it was decisively within the purview of the statutes to regulate such transfers; else those statutes might be evaded, and the pernicious power to prefer be retained by changing the form of the instrument." But it has been urged that the assignment to Messrs. Wallace & Krebs was "in payment" of the creditors, and not in trust for them. Still, the legal title to the securities became vested in the assignees, and the equitable interest was all that the creditors acquired. By the Act of the 16th of April 1849, it was declared that a condition in an assignment for the payment of such creditors only as should execute a release, should be deemed a preference and be void. The stipulation here that the securities transferred should be "in payment" of the debts owing by Irvin & Brothers (if the word "payment" was used in the sense of satisfaction), was but the equivalent of a condition for payment upon release. It could not be known whether the amount to be realized would satisfy the indebtedness or not. Some of the creditors were not represented, and their right to participate in the fund would be dependent on their consent to take such share of it as would come to them in discharge of their demands. The Act of 1849, as well as the Act of the 17th of April 1843, applied to assignments of property made by debtors to trustees "on account of inability at the time to pay their debts." This instrument expressly recited the firm of Irvin & Brothers to be in just that condition. They were unable to pay their debts; they assigned to third persons securities to a large amount to be held and collected for a portion of their creditors, and they stipulated that the creditors thus benefited should receive the proceeds of the securities "in payment" of their claims. It is impossible to see how this can be treated otherwise than as an assignment for the benefit of the creditors designated, and an assignment too by which those creditors were preferred. If the language of the instrument were to be construed as providing for a payment on account of, and not in full for the demands of the creditors, its effect would only be altered to the extent that the condition for a release would not be implied.

In principle, this case is not distinguishable from that of the Miners' National Bank's Appeal, 7 P. F. Smith 193. In apparent features, indeed, the difference consists in the fact that the whole object of the transaction was expressed in that case with stated

[Wallace *v.* Wainwright.]

results precisely the same as those which the legal operation of this assignment would work out.   Charles Miller assigned twenty-one items of property to William Miller and Morris Patterson, in trust, to sell at their discretion, and apply the proceeds to the payment of twenty-four named creditors, the surplus, if any, being payable to the assignor ; but it was provided that if the proceeds should not pay the creditors in full, it should be disbursed among them *pro rata.*   Upon these facts the present Chief Justice said : " when a man can no longer go on in business, and what he has must pass into the liquidation of his debts, fairness requires that he should not dictate the course his property shall take.   The Act of the 17th April 1843, is entitled ' an act to prevent preferences in assignments,' and it is argued from the title that its intention was only to forbid preferences expressed in the deed itself.   But this is contrary to the public sentiment which led to the proposal of the act, and to the plain intent found upon its face.   It would enable the debtor always to prefer creditors simply by framing his deed to suit his purpose.   He has thus to name only those he would prefer, and leave others out ; and indeed, under that construction of the law, I see nothing to prevent his multiplying his deeds, and thereby to divide his estate and graduate his preferences."   The opinion went on to prove that the Acts of 1843 and 1849, were intended to secure a distribution of the property transferred among the whole body of the creditors of the assignor, where the assignment, whether general or partial, should be made in anticipation of impending failure.   The whole reasoning of the Chief Justice, as well as the views expressed by Judge Brewster in his lucid and thorough discussion of the same case, apply here with direct and peculiar force.

Numerous authorities have been referred to and relied on by the counsel for the defendants.   They have been examined and considered, and none of them have been found to support the allegation of error in this judgment.   Chaffees *v.* Risk, 12 Harris 432, was the case of an assignment made directly to the creditors of the assignor.   Judge LEWIS said that by such an assignment " the legal estate and the equitable interest are vested in one and the same person."   Henderson's Appeal, 7 Casey 502, was also the case of an assignment of a number of claims in the hands of an attorney made directly to the persons beneficially interested.   The claims were described by reference to a list which H. L. Richmond held.   On the margin of this list, after the execution of the assignment, there was written : "I assign to H. L. Richmond this list of accounts for the uses named in his receipt to me of this date ;" and this was signed by the assignor.   In the discussion by this court of the effect of these instruments, it was said : " The defendants insist that the debt of Townley, and all the debts in the list alluded to, did not pass under the assignment we have been considering ; but was intended to pass under an assignment made the same day

[Wallace v. Wainwright.]

by Osborn to Richmond, in trust for the benefit of the New York creditors; and that this assignment was clearly within the Act of 1818, and therefore, not being recorded, was void as against a subsequently attaching creditor. This conclusion is inevitable if the premises are well assumed." The two instruments, however, were held to constitute together one transfer, and the paper given to Richmond was treated as designed to pass over the "list" of the accounts to him as the attorney of the New York creditors, to whom the accounts contained in that list had been formally assigned. There was thus an express declaration by this court that if the case stood on the assignment to Richmond alone, it would have been within the Act of 1818. In the York County Bank v. Carter, 2 Wright 446, partners who were heavily indebted transferred their entire property to a creditor in consideration of his satisfaction of his claim against them, and his agreement to pay the balance of the purchase-money in discharge of the debts of certain other specified creditors. It was held that the papers imported a sale, and not the creation of a trust for creditors, and that, though it might have been shown by parol evidence that such a trust was intended, it was a question of fact for the jury, and not of law for the court. The facts in Fallon's Appeal, 6 Wright 235, showed a sale through the intervention of trustees, with a security analogous to a mortgage for the purchase-money, and not an assignment for the benefit of creditors. All that Vallance v. The Miners' Life Insurance Co., 6 Wright 441, settled was that an assignment or transfer of property made directly to the creditors beneficially interested in it, whether in satisfaction of or as a security for their debts, was not within the Act of 1818. Of the three instruments set up to establish a trust for creditors in Beans v. Bullitt, 7 P. F. Smith 221, the first was decided to be a mortgage, the second a power of attorney, and the third an absolute transfer directly to sixteen creditors, and in neither of them was any trust intended or expressed. In Taylor v. Cornelius, 10 P. F. Smith 187, a debtor conveyed all his real estate to a creditor, who at the same time made a declaration of trust that he would sell all or part of the property, apply the proceeds in payment of the debts due himself and such sums as he should advance, and $5000 for his commissions, and convey the remaining property to the debtor. Of course these instruments were treated together as constituting a mortgage. In Claflin v. Maglaughlin, 15 P. F. Smith 492, choses in action were assigned directly to creditors, and the instrument transferring them contained a direction to the attorney who had the claims in his hands for collection to pay the proceeds to the assignees. This, it was decided, was not an assignment required to be recorded under the Act of 1818. It may be remarked, in passing, that the president of the Common Pleas, in his opinion in Claflin v. Maglaughlin, omitted, in referring to Henderson's Appeal, to state the essential

[Wallace *v.* Wainwright.]

fact that the ruling in that case rested on the assignment of the securities to the creditors themselves, and not on the transfer of the list of them to Mr. Richmond.

It is to be kept in mind that Messrs. Wallace & Krebs had no beneficial interest whatever in the claims assigned to them. They were neither creditors nor purchasers; they had made no advances, and they had no lien. Under the facts presented, it is not believed that there is any precedent to warrant an interference by this court with the record made up in the Common Pleas.

Judgment affirmed.

SHARSWOOD and PAXSON, JJ., dissent.