In re KENVAL MARKETING CORPORATION, Debtor.

Fred ZIMMERMAN, Trustee, Plaintiff,

v.

FREM CORPORATION, Defendant.

Bankruptcy No. 83–02723F.
Adv. No. 86–1240F.

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 11, 1987.

See also, D.C., 65 B.R. 548.

Leon S. Forman, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for trustee/plaintiff, Fred Zimmerman.

Martin J. Aronstein, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant, Frem Corp.

## OPINION

BRUCE FOX, Bankruptcy Judge:

This is an action by a trustee in a chapter 11 case to set aside a prepetition transfer pursuant to 11 U.S.C. § 544(b). The defendant has moved to dismiss the complaint pursuant to Bankr.Rule 7012 and Fed.R. Civ.P. 12(b)(6). The issue before me is whether a bankruptcy trustee may maintain an action, pursuant to section 544(b), to avoid a prepetition transfer which is allegedly preferential under applicable state law (in this case, 39 P.S. § 151), when the following facts coalesce: (1) the transfer took place within four months of a prepetition assignment for the benefit of creditors; (2) the assignee is not an unsecured creditor of the debtor and (3) there are actual unsecured creditors of the debtor.

For the reasons set forth below, I conclude that the trustee may maintain this action and I will deny defendant's motion.

### I.

Since this case is before me on a motion to dismiss the complaint, the trustee's factual allegations set out in his complaint are accepted as true for purposes of deciding this motion. *E.g., D.P. Enterprises v. Bucks County Community College,* 725

F.2d 943 (3d Cir.1984); *In re Grosse,* 68 B.R. 847 (Bankr.E.D.Pa.1987).

On or about March 8, 1983, the debtor, Kenval Marketing Corp. executed an assignment for the benefit of creditors in Pennsylvania. On July 7, 1983, an involuntary petition under chapter 7 of the Bankruptcy Code was filed against the debtor. An order for relief was entered on April 12, 1984. On July 2, 1984, this bankruptcy case was converted from chapter 7 to chapter 11. A trustee was appointed by the court on October 14, 1984.

Less than four months before the assignment for the benefit of creditors took place, the debtor made several transfers to the Frem Corp., the defendant herein, as follows: (1) payment of $1,200.00 on December 29, 1982; (2) payment of $760.00 on January 10, 1983; and (3) payment of $2,000.00 on January 28, 1983. According to the trustee's complaint, these transfers were made while the debtor was insolvent (or in contemplation of insolvency), with intent to benefit the defendant and provide it with an unfair advantage and preference over other creditors.

## II.

The trustee argues that the transfers at issue are voidable pursuant to the Pennsylvania Insolvency Statute, 39 P.S. § 151, which is made applicable in this court by 11 U.S.C. § 544(b).[1] Section 544(b) provides:

The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under 502 of this title or that is not allowable only under section 502(e) of this title.

39 P.S. § 151 provides:

If any person, persons, firm, limited partnership, joint-stock company or corporation, being insolvent or in contemplation of insolvency, with a view to give a preference to any creditor or person having a claim against, or who is under any liability for, such insolvent, shall procure, suffer or permit any judgment to be entered, by confession or otherwise, or any execution to be levied, or any attachment or sequestration to be made of any part of his, their or its real or personal property, or shall make any payment, pledge, assignment, transfer, conveyance or encumbrance thereof, either absolutely or as collateral security for a debt then existing, whether due or not, such judgment, execution, attachment, sequestration, payment, pledge, assignment, transfer, conveyance, or encumbrance shall inure to the benefit of all the creditors of such insolvent, if an assignment for the benefit of creditors be made or proceedings in insolvency be commenced within four months after such judgment, execution, attachment, sequestration, payment, pledge, assignment, transfer, conveyance, or encumbrance shall have been entered, issued, commenced, made or recorded, and in the case of personal property exclusive possession given.

Both parties recognize that the challenged transfers from the debtor to the defendant cannot be avoided under 11 U.S.C. § 547(b) since they took place more than ninety days prior to the bankruptcy filing. However, under 39 P.S. § 151, the "reach back" period for avoidance is four months prior to the assignment for the benefit of creditors and all the transfers in question here took place within this time period. Thus, if the trustee can use 39 P.S. § 151 (through 11 U.S.C. § 544(b)) and if he can establish the other elements necessary under the state statute, he can avoid the debtor's transfers to the defendant.

Section 544(b) is one of several Code provisions giving the trustee the power to

---

1. As the parties note in their memoranda of law, the trustee has filed twenty seven other adversary complaints to avoid prepetition transfers of the debtor employing the same legal theory as in this case. As counsel for the defendant herein also represents some of the defendants in those other actions, the trustee has entered into stipulations with each of those defendants pursuant to which no responsive pleading is required until disposition of the motion at bar in this case.

set aside prepetition transfers of property. Unlike other Code provisions, such as sections 547, 548 and 549, section 544(b) contains no original substantive standards for determining whether a transfer is avoidable. As Collier states:

> [S]ection 544(b) does not create in the trustee any independent right or power of action with which to challenge an allegedly invalid transfer. Like Prometheus bound, the trustee is chained to the rights of creditors in the case under title 11. If there are not creditors within the terms of section 544(b) against whom the transfer is voidable under applicable law, the trustee is powerless to act so far as section 544(b) is concerned. It is not necessary, however, that there be more than one such creditor.

4 *Collier on Bankruptcy* ¶ 554.03, at 544–17 (15th ed. 1986) (footnotes omitted) (hereinafter "Collier").

The defendant's main argument in this case is textual: there is no actual creditor of the debtor, as required by section 544(b), who has the power under Pennsylvania law to void the transfer. The defendant contends that under the relevant state statutory provisions, 39 P.S. § 151 and § 71,[2] only an assignee (for the benefit of creditors) or a receiver in a state insolvency proceeding has the power to avoid the transfer at issue. The exercise of such power by an assignee or receiver would be for the benefit of all creditors, but this does not mean that the creditors themselves have the avoidance power under state law. The defendant then reasons that section 544(b) "does not permit the trustee to avoid transfers that are merely avoidable *for the benefit of* actual creditors, but only those that can be avoided *by* actual creditors." (Defendant's Memorandum of Law at 6 (emphasis in original)). In this case, the trustee concedes that an assignee is *not* a creditor of the debtor with an unsecured claim allowable under section 502. *Accord, In re Komfo Products Corp.,* 247 F.Supp. 229 (E.D.Pa.1965) (assignee for benefit of creditors is not *per se* an actual creditor under section 70(e) of former Bankruptcy Act). Therefore, the defendant contends that even though there may be unsecured creditors of the debtor, since the assignee is not such a creditor, the trustee is without the assignee's power to avoid transfers under 39 P.S. § 151 and 11 U.S.C. § 544(b). *See* Countryman, *The Use of State Law in Bankruptcy Cases (Part II),* 47 N.Y.U.L.Rev. 631, 662–63 (1972).[3]

**2.** 39 P.S. § 71 provides:

> An assignee or receiver for the benefit of creditors shall be under the control of the proper court of common pleas; shall be the representative of the creditors of the insolvent, and entitled by proper legal steps, in his own name as assignee or receiver, to have vacated and set aside for the benefit of all the creditors any judgment, execution, attachment, sequestration, payment, pledge, assignment, transfer, conveyance or encumbrance which heretofore could have been avoided by the creditors, or any of them, or by which it is attempted to give one creditor preference over another, or which by this act, inures to the benefit of all the creditors of such insolvent. He shall be vested with all the property of the insolvent, real or personal, which the insolvent could have sold, assigned or conveyed, or which might have been taken in execution, or otherwise made liable for his debts or engagements, or any of them, at law or in equity, including patents and copyrights, royalties, debts due to or for the insolvent, liens or securities therefor, and rights of action or redemption; and, by leave of and subject to the control of the court, may carry on any business in which the insolvent may have been engaged. Every beneficial power and the interest of any person entitled to compel the execution of a trust power shall pass to the assignee or receiver of the person in whom such power or interest is vested. He may, by bill of discovery or other legal or equitable proceeding, obtain information of, and sue for and recover, in his own name as such assignee or receiver, any assets which the insolvent might sue for and recover, or which any of his creditors might make available in payment of their claims; and any recovery had shall inure to the benefit of all, in proportion to their respective demands.

**3.** In a brief discussion of the issue, Professor Countryman observes that the statutory construction urged by the trustee requires that the phrase "voidable under applicable law by a creditor" be read to mean "voidable under applicable law by a creditor or representative of the creditor." While he states that this reading of the statute "does not seem proper," his conclusion is based on the lack of clarity of the statu-

The trustee counters with two arguments. First, he argues that in an earlier proceeding in this bankruptcy case, this court held that the avoidance powers that the assignee could have asserted under 39 P.S. § 151 may be utilized by the trustee. *In re Kenval Marketing Corp.*, 40 B.R. 445, 449 (Bankr.E.D.Pa.1984). The trustee submits that this earlier decision is the "law of the case." Second, the trustee argues, that caselaw in this Circuit establishes that a bankruptcy trustee may step into the shoes of a state law assignee for the benefit of creditors and exercise the assignee's avoidance powers under 39 P.S. § 151.

### III.

The trustee asserts that Chief Judge Goldhaber's previous decisions in *In re Kenval Marketing Corp.*, 38 B.R. 241 (Bankr.E.D.Pa.1984) (*Kenval I*) and 40 B.R. 445 (Bankr.E.D.Pa.1984) (*Kenval II*) are binding in this adversary proceeding as the law of the case. I do not agree.

In *Kenval I*, the court entered an order for relief against the debtor on an involuntary petition. In connection with that decision, the court rejected the assignee for the benefit of creditors' argument that abstention was appropriate under 11 U.S.C. § 305. In *Kenval II*, the assignee and the debtor requested that the court vacate its earlier order. This led the court to discuss the scope of the trustee's powers under section 544(b) in more detail. Chief Judge Goldhaber concluded that the trustee could utilize the powers of the assignee under 39 P.S. § 151. However, he also explained:

> The essence of the difficulty in the matter at hand is that our decision to abstain must necessarily be grounded on the expected outcome of preference actions which have yet to be commenced or tried. From our perspective it seems unwise to burden a preliminary proceeding requiring prompt attention ... [*i.e.*, a hearing on an involuntary petition] with the obli-

gation to try ancilliary preference actions to determine if we should abstain from ordering relief.

40 B.R. at 449.

The doctrine of law of the case has been concisely summarized as follows:

> Under the doctrine of the law of the case, a decision on an issue of law made at one stage of the case becomes binding precedent to be followed at successive stages of the *same litigation*.

1B J. Moore, *Federal Practice* ¶ 0.404[1], at 117 (2d ed. 1984) (emphasis added) (hereinafter "Moore"), *quoted in In re Grosse*, 68 B.R. at 849. In the interest of finality and effective administration of justice, the doctrine expresses a policy of the courts to refuse to reopen that which has been decided, but not a limitation on the court's power. *E.g., Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir.1982).

I conclude that the decisions in *Kenval I* and *Kenval II* are not law of the case in the proceeding now before me for two reasons. First, the trustee's complaint under section 544(b) and the abstention motion filed in connection with a determination in an involuntary petition under section 303 are not successive stages of the *same* litigation. Neither party before me in this proceeding was part of or was represented in *Kenval I* and *Kenval II*. Moreover, the underlying bankruptcy case and an adversary proceeding are distinct legal actions, with very different relief sought.

I find support for this conclusion in the Ninth Circuit's decision in *In re Staff Mortgage & Investment Corp.*, 625 F.2d 281 (9th Cir.1980). In that bankruptcy, creditors of the debtor filed an adversary proceeding to compel the trustee to turn over certain property to them. The bankruptcy court determined that creditors' interest in the property was subordinate to the trustee's and this decision was eventually affirmed on appeal. *See In re Staff Mortgage & Investment Corp.*, 550 F.2d 1228 (9th Cir.1977). Other creditors of the debt-

---

tory text. He does not suggest that the trustee's broader construction is inconsistent with actual Congressional intent or that it is inappropriate

on policy grounds. He simply states that it would be desirable to amend the statute to make Congress' intent clearer.

or later filed an adversary proceeding raising similar issues on virtually identical facts. The Ninth Circuit held that "[t]he separate proceedings did not constitute the same case; thus the doctrine of the law of the case was not applicable." 625 F.2d at 283.

Second, I have some doubts whether the determination in *Kenval II* that the trustee could maintain an action under section 544(b) was completely necessary to the court's decision on the issue before it. Indeed, even Chief Judge Goldhaber expressed considerable doubt about the need to resolve an issue relating to an unfiled preference action in deciding whether to abstain under section 305.[4] The rationale of *Kenval II* is only that when the power of the trustee to avoid certain prepetition transfers is a factor in determining the best interests of the creditors pursuant to an abstention motion under section 305, the bankruptcy court will not abstain where there is a plausible theory for the trustee's recovery. Therefore, in these circumstances, I conclude that it is appropriate to reach the merits of the defendant's motion.

**4.** In fact, the *Kenval* opinions note that in addition to the transfers arguably avoidable under section 544(b), there were also transfers in excess of $1 million to insiders within one year of the filing of the petition. 40 B.R. at 449; 38 B.R. at 245. These transfers could be avoidable pursuant to section 547(b)(4)(B). Thus, even if the court had concluded that the trustee may not exercise the avoidance powers under 39 P.S. § 151, the court might nevertheless have denied the abstention motion.

**5.** Section 544 is derived from section 70(e) of the prior Bankruptcy Act. *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 85 (1978); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 370 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. At the time of its repeal, section 70(e) (11 U.S.C. 110(e)) provided:

(e)(1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor.

(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and re-

## IV.

Neither the parties' nor my research has uncovered any case expressly addressing the issue whether the trustee may, through section 544(b) of the Bankruptcy Code,[5] exercise the avoiding powers of a state court receiver or assignee for the benefit of creditors under a state statute which, on its face, may vest the avoidance power exclusively in the receiver or assignee. Nor are there any cases in Pennsylvania determining whether an individual creditor may exercise the assignee's or receiver's powers under 39 P.S. § 151 in state insolvency proceedings.[6]

Due to the paucity of decisional authority, the parties' arguments have focused on the meaning of two Third Circuit cases: *Copter, Inc. v. Gladwin Leasing Co.*, 725 F.2d 37 (3d Cir.1984) (*Copter*), *aff'g*, 28 B.R. 665 (E.D.Pa.1983), and *In re McElwain*, 296 Fed. 112 (3d Cir.1924) (*McElwain*).

In *Copter*, the debtor made an allegedly preferential transfer ninety nine days be-

leased from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate: PROVIDED, HOWEVER, That the court may on due notice order such transfer or obligation to be preserved for the benefit of the estate and in such event the trustee shall succeed to and may enforce the rights of such transferee or obligee. The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whoever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision is valid under applicable Federal or State laws.

(3) For the purpose of such recovery or of the avoidance of such transfer or obligation, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction.

**6.** Surprisingly, there are few cases on this issue in other jurisdictions and those decisions are divided. *Compare Spelman v. Freedman*, 130 N.Y. 421, 29 N.E. 765 (1892) *with Root v. Potter*, 59 Mich. 498, 26 N.W. 682 (1886). *See generally In re McKeesport Steel Castings Co.*, 799 F.2d 91 (3d Cir.1986).

fore filing a voluntary bankruptcy petition under chapter 7. There was no assignment for the benefit of creditors or state receivership proceedings prior to the bankruptcy. The bankruptcy trustee argued that the bankruptcy filing constituted a "proceeding in insolvency" under 39 P.S. § 151, thus triggering the four month reach back period under that statute, and sought to avoid the transfer under section 544(b). The Third Circuit rejected the trustee's argument, holding that the reference to "proceedings in insolvency" in 39 P.S. § 151 was intended to incorporate only *state* insolvency proceedings and not federal bankruptcy proceedings. 725 F.2d at 37. The district court in *Copter*, whose decision was affirmed, had observed that

> if there had been an assignment for the benefit of creditors or a state receivership [prior to the bankruptcy], 39 P.S. § 151 would constitute "applicable law" [under 11 U.S.C. § 544(b)] and would permit a four-month reach back *from the time of the assignment or state proceeding, not from the date of the federal filing in bankruptcy....*

28 B.R. at 668 (emphasis in original).

Significantly, the Third Circuit in *Copter* cited with approval the *McElwain* case, a decision under the prior Act, as "demonstrat[ing] how the Pennsylvania [Insolvency] Act ... was intended to operate in harmony with the Federal Bankruptcy Act." 725 F.2d at 39 (footnote omitted). *McElwain* construed section 67(b) of the Act which, at the time of the decision, provided:

> Whenever a creditor is prevented from enforcing his rights as against a lien created, or attempted to be created, by his debtor, who afterwards becomes a bankrupt, the trustee of the estate of such bankruptcy *shall be subrogated to*

*and may enforce such rights of such creditor for the benefit of the estate.*

11 U.S.C. § 107(b) (repealed 1938), *reproduced in*, 4 Collier ¶ 67.02, at 21 n. 5 (14th ed. 1978) (emphasis added).[7]

In *McElwain*, a transfer took place within four months of an institution of a state court insolvency proceeding. Shortly thereafter, the transferor filed a voluntary petition in bankruptcy. The bankruptcy referee and district court held, in effect, that: (1) the trustee, by virtue of section 67(b) of the Bankruptcy Act, was subrogated to rights of the creditors to invalidate the preference under the state statute (now codified at 39 P.S. § 151) and (2) since the state insolvency proceeding was begun within four months of the transfer, the transfer could be avoided by the bankruptcy court even though it fell outside the "reach back" period under the federal bankruptcy preference provision then in effect. The Third Circuit affirmed the decision of the district court, reasoning that:

> the state act.... is.... one of insolvency administration, and while all proceedings thereunder are, of course, superseded when a bankrupt proceeding is begun, yet there is no reason why the bankrupt court should not avail itself of the status and proceedings then existing in the state court proceeding where such status or proceeding may aid in the administration by the bankruptcy court, of the bankrupt's property.

*McElwain*, 296 Fed. at 119.

■ The defendant here urges that I interpret *Copter* as simply a case holding only that the trustee cannot, under section 544(b), stand in the shoes of a hypothetical assignee or receiver and that any discussion of the issue whether the trustee can stand in the shoes of an actual assignee is mere dictum. The defendant also seeks to

---

**7.** One court explained the meaning of section 67b as follows:

> The word "prevented" in this section means, of course, prevented by bankruptcy proceedings.... And the clear meaning of the section is that, where by bankruptcy proceedings a creditor or creditors are prevented from enforcing their rights in property apparently

belonging to the bankrupt or standing in his name, but claimed by a third party, the trustee in bankruptcy is subrogated to their rights against such property and may enforce same for the benefit of the estate.

*John Hetherington & Sons v. Rudisill*, 28 F.2d 713 (4th Cir.1928).

distinguish *McElwain* as interpreting as a "substantially different" bankruptcy statute from either section 544(b) of the Code or its predecessor, section 70(e) of the Act.[8]

I find the defendant's effort to distinguish *McElwain* unconvincing and conclude that *McElwain* is forceful precedent in the trustee's favor. The provision of the prior Act being construed in *McElwain* is neither significantly different in purpose or text from section 544(b). Both statutory provisions were designed to give the trustee the power to avoid transfers under state law and, by their express terms, give the trustee the same rights as creditors of the debtor. *See* 4 Collier ¶ 67.01, at 17–233 (14th ed. 1978). If defendant's position is correct, *McElwain* should have been decided against the trustee because a state insolvency proceeding had been instituted prior to the bankruptcy and, according to the defendant, only the receiver may exercise the avoidance powers under 39 P.S. § 151. However, not only was *McElwain* decided in favor of the trustee, but its rationale has been quoted with approval by the Third Circuit in the recent *Copter* decision. In these circumstances, I conclude that *McElwain* is still good law.

At the same time, however, *McElwain* does not truly articulate a clear rationale for its conclusion. Certainly, the opinion does not hold that, under Pennsylvania law, an individual creditor can file an action in lieu of a receiver or assignee for the benefit of creditors under 39 P.S. § 151 to avoid a transfer. The probable rationale was expressed by the Fourth Circuit in *John Hetherington & Sons, Ltd. v. Rudisill*, 28 F.2d 713 (4th Cir.1928), another case involving facts similar to *McElwain* and a trustee's attempt to use section 67(b) of the former Act. In that case, the court reasoned:

> The [prepetition] receivership ... was in the nature of judicial process by which the rights of general creditors were fastened upon the property to the exclusion

of claims for specific liens which [are avoidable under state law] ... [T]he rights to which the trustee is subrogated are ... rights in favor of creditors generally, which have been obtained by reason of the sequestration of the property under the receivership, and which pass with the property when it is transferred by the receiver who has held it for the benefit of creditors, to the trustee in bankruptcy, who also holds it for their benefit.

28 F.2d at 717; *accord, In re K–T Sandwich Shoppe*, 34 F.2d 962 (N.D.Ohio 1929).

▮▮▮▮ In short, I read *Copter* and the cases under the Act to mean that where the statute uses the phrase "voidable under applicable law by a creditor," Congress intended that phrase to encompass the rights held by a representative of the creditor in an actual state court prepetition insolvency proceeding.

The defendant contends, not unreasonably, that had Congress intended to grant the trustee, through section 544(b), the powers of the state receiver or assignee for the benefit of creditors, it would have expressly granted the trustee the power of a "custodian" as well as a "creditor." *See* 11 U.S.C. 101(10)(A), (B) (definition of "custodian" includes nonbankruptcy receiver and assignee for the benefit of creditors). While this textual argument has some plausibility, it is inconsistent with Congressional intent.

It is axiomatic in bankruptcy law that one of the purposes of bankruptcy is to provide for equality of distribution of a debtor's non-exempt assets among his creditors and that the trustee's power to avoid prepetition transfers is designed to further that purpose. *See, e.g.,* H.R.Rep. No. 95–595, 95th cong., 1st Sess. 177–78 (1977). Collier has described section 544(b)'s predecessor, section 70(e) of the Act as follows:

---

**8.** The defendant also argues that *McElwain* is distinguishable because it involved a vastly different factual pattern which strongly suggested a fraudulent transfer. This argument is totally

unpersuasive. Nothing in the opinion suggests that the transfer being avoided was materially different from the transfer in the case at bar.

It comprises the last link in the chain of provisions revised or created by the 1938 Act for such purpose.... [Whereas sections 60, 67a, d, f and 70c contain numerous conditions and qualifications], § 70e is all inclusive. It reaches out and gathers in for the trustee all the powers of avoidance available to the creditors of the estate under applicable state or federal law, without limit as to time or effect, except insofar as such power is limited by the state or federal law so invoked....

.    .    .    .    .

The foregoing discussion outlines the framework of the Act in its "all-out" effort to give the trustee every right and power needed to fulfill successfully the chief purposes of bankruptcy—that is, equality of distribution among creditors.... [Section 70e] is intended to reach fraudulent or otherwise invalid transfers or encumbrances that would escape particularly the more precise and narrow limits of §§ 60, 67a and d, and in some cases § 70c. Without the presence of § 70e, many transfers or encumbrances otherwise immune would evade the remedial effects of the Bankruptcy Act.

4B Collier ¶ 70.69[1], at 764–66 (14th ed.) (footnotes omitted), citing, Analysis of H.R. 12889, 74th Cong., 2d Sess. 231 (1936). See also H.R.Rep. No. 75–1409, 75th Cong., 1st Sess. 3, 30 (1937).

Some further indication of Congressional intent to provide the trustee with broad avoiding powers is found in 11 U.S.C. § 543, which mandates the turnover of property of the debtor to the trustee by a custodian (e.g., an assignee) with knowledge of the commencement of the case. Traditionally, a state insolvency case is superseded by the filing, within four months, of a federal bankruptcy petition. See In re McElwain; 5 Remington on Bankruptcy § 2084 (5th ed. 1953) ("Remington"); 3 Pennsylvania Law Encyclopedia, Assignments for Benefit of Creditors § 1, at 214 (1957). See also 11 U.S.C. § 543(d)(2). Under both the prior Act and section 543 of the Code, a superseded state receiver or assignee is required to deliver the debtor's property to the bankruptcy trustee and cease administering the property. See In re Glinz, 36 B.R. 17, 18 (Bankr.D.N.D. 1983); 4 Collier ¶ 543.01, at 543–3 to 543–7 (15th ed.). In this respect, a bankruptcy trustee is the successor in interest to the state court receiver or assignee. See 5 Remington § 2089.

When viewed from the perspective of section 543, it makes sense to conclude that the trustee should assume the status and powers of the receiver or assignee in the state insolvency proceeding pursuant to section 544(b), provided an actual proceeding was instituted prior to the bankruptcy. See McElwain, 296 Fed. at 114. This conclusion is particularly apt in a state, such as Pennsylvania, where an assignee for the benefit of creditors is not merely a successor to the assignor but also is a representative of the assignor's creditors and is under the control of the Court of Common Pleas. 39 P.S. § 71; see Wallace v. Wainright, 87 Pa. 263, 6 W.N.C. 550 (1878); Appeal of Fallon, 42 Pa. 235 (1862); Appeal of McLellan, 26 Pa. 463 (1856). The filing of the bankruptcy substitutes a binding federal proceeding for equitable distribution of a debtor's assets to its creditors for a voluntary state proceeding. In superseding the state insolvency proceeding, surely Congress intended to allow the creditors the benefits of the superseded state proceeding. Conversely, it makes little sense to conclude that Congress intended, in section 543, to divest the state receiver or assignee of all authority to act without granting the trustee equivalent authority through section 544(b).

In light of the purposes of section 544(b) and its predecessors, the judicial construction they have been accorded in this Circuit and the traditional relationship between state insolvency proceedings and bankruptcy as presently expressed in section 543 of the Code, I am reluctant to conclude that the omission of the phrase "custodian" in section 544(b) represents Congress' intent to deprive trustees of the avoidance powers

of actual prepetition receivers or assignees acting on behalf of actual creditors. I believe that if Congress intended such a result, it would have expressed itself more clearly. *See Midatlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986).

Finally, the defendant raises a policy argument to counter this result. Under section 60 of the prior Act, a preference could be recovered by the trustee only if the transferee had reasonable cause to believe that the debtor was insolvent at the time the transfer was made. Some showing of intent or knowledge is also necessary under 39 P.S. § 151. The current bankruptcy preference provision, section 547 of the Code, modified prior law in that it no longer requires any showing of the transferee's scienter. The defendant argues that the changes in section 547 were intended to preclude the kind of action brought by the trustee here. The defendant reasons that because preference determinations are now based on relatively objective facts, a prepetition transferee can make a straightforward evaluation of the applicability of any of the defenses under section 547(c) and avoid time consuming litigation on issues of intent. The defendant suggests that allowing the trustee to proceed under section 544(b) and 39 P.S. § 151 undercuts the changes Congress intended to implement under section 547 and that it is particularly unfair to subject a transferee located in another jurisdiction to such litigation on a relatively small claim; the defendant likens it to "quasi-blackmail."

I am not persuaded by this argument for several reasons. First, nothing in the legislative history suggests that Congress intended section 547 to be the exclusive vehicle available to the trustee to avoid transfers or to provide relief to transferees from trustee avoidance actions. Indeed, the legislative history can be read to suggest that the changes in the preference provision were simply designed to facilitate recovery by the trustee. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 177–78 (1977). Nor does the legislative history of section 547 contain any suggestion that Congress wished to limit the scope of section 544(b). The very purpose of section 544(b) and its predecessors has been to supplement the other avoidance provisions; if the defendant were correct, Congress would not have enacted or would have modified section 544(b).

Similarly, if the size of the transfer were relevant, Congress would have prohibited, in section 544(b), the avoidance of transfers below a certain value. *See* 11 U.S.C. § 547(c)(7) (individual debtor whose debts are primarily consumer debts may not avoid transfers with aggregate value less than $600.00); 28 U.S.C. § 1409(b) (if trustee seeks to recover property worth less than $1,000.00 or a consumer debt of less than $5,000.00, such action may be brought only in the district in which the defendant resides); 28 U.S.C. § 1409(c) (except as provided in 28 U.S.C. § 1409(b), an action under section 544(b) may be brought in district where the state court sits in which, under applicable nonbankruptcy law, the creditors could have commenced the action on which such proceeding is based).

Nor is it true that actions under section 547 are devoid of factual issues necessitating a significant expenditure of resources by a transferee wishing to defend against a trustee's avoidance action. *See, e.g., In re American International Airways, Inc.*, 68 B.R. 326 (Bankr.E.D.Pa., 1986); *In re Art Shirt, Ltd.*, 68 B.R. 316 (Bankr.E.D.Pa., 1986).

Moreover, there are countervailing policy considerations. If the defendant's argument were accepted, a debtor could make intentional, preferential transfers to those creditors it desires to favor and then make an assignment for the benefit of creditors. The non-preferred creditors might justifiably expect that the assignee will avoid the transfer in the state insolvency proceeding pursuant to 39 P.S. §§ 71, 151. These transfers might then be insulated from challenge if the debtor files a voluntary petition or the preferred creditors file an involuntary petition against the debtor

more than 90 days after the transfer (but less than four months after the assignment). *See* 11 U.S.C. § 303(b)(2). Both the trustee and the assignee would be powerless to avoid the preferential transfer under 39 P.S. § 151 or sections 547 or 544(b) of the Code (except as to insiders). Such a result is inconsistent with the spirit and intent of section 544(b).

### V.

For the reasons set forth above, an order will be entered denying the defendant's motion to dismiss the complaint.