845 F.2d 66
 9 Employee Benefits Ca 2009
 Virginia M. SEJMAN; A.R. Trautwein; Thomas H. Givens;
Thomas J. McHugh, Jr.; Glenda Idle; Roy G. Cook; Joseph
D. Dubuque; Robert Reese; Joe L. Norman; Morris Leister;
Mary J. Miller; Raymond G. Bernhardt; Lewis Lathern, on
behalf of themselves and all others similarly situated,
Plaintiffs-Appellees,
v.
WARNER-LAMBERT COMPANY, INC., Defendant-Appellant.
Thomas H. GIVENS; M.L. Brannon; John J. Caputo; C.E.
Robinson, Jr., Plaintiffs-Appellees,
v.
WARNER-LAMBERT COMPANY, INC., Defendant-Appellant.
 Nos. 87-3824, 87-3825.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 6, 1988.
Decided April 18, 1988.
 
 Margaret Blair Soyster (Roger & Wells, O.W. Bannister, Jr., Hill, Wyatt & Bannister on brief), for defendant-appellant.
 Clarence Rauch Wise (Wise & Tunstall on brief), for plaintiffs-appellees.
 Before HALL and WILKINSON, Circuit Judges; and BULLOCK, United States District Judge for the Middle District of North Carolina, sitting by designation.
 K.K. HALL, Circuit Judge:
 
 
 1
 This consolidated appeal arose from two civil actions wherein former employees of Warner-Lambert Co., Inc. ("Warner-Lambert") asserted a right under South Carolina contract law to benefits pursuant to their former employer's severance policy. Warner-Lambert moved for summary judgment on the ground that state law claims for severance benefits were preempted by the standards of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sec. 1001 et seq. ("ERISA"). The district court denied summary judgment, concluding that Warner-Lambert's failure to raise ERISA preemption in the earlier case of Livernois v. Warner-Lambert Co., Inc., 723 F.2d 1148 (4th Cir.1983), left state contract law as the governing law of the case. The district court certified its decision as a controlling question of law pursuant to 28 U.S.C. Sec. 1292(b), thereby permitting an immediate appeal by Warner-Lambert. We now reverse and remand.
 
 I.
 
 2
 Until January 20, 1982, all appellees were employed by Warner-Lambert in its Medical-Surgical Division located in Greenwood, South Carolina. On that date the Medical-Surgical Division was sold as an operating business to Professional Medical Products, Inc. ("PMP"). The former Warner-Lambert employees all continued to work for the new owner at the same location with essentially the same level of compensation and benefits.
 
 
 3
 Following the sale, eleven Medical-Surgical Division employees brought suit in federal district court against Warner-Lambert,[1] alleging that the sale had terminated their employment and thus created an entitlement to benefits under Warner-Lambert's severance policy.[2] Applying South Carolina law in its interpretation of the severance policy, the district court held that the employees had established a contractual right to benefits. In Livernois v. Warner-Lambert Co., Inc., supra, this Court reversed the district court's judgment, concluding that although Warner-Lambert did bear a continuing contractual obligation toward its former employees, the sale of the Medical-Surgical Division was not, of itself, a termination of employment. This Court further concluded that the employees' right to severance pay would not arise unless the successor employer directly or indirectly terminated their employment.
 
 
 4
 In 1985, two groups of former Warner-Lambert employees brought civil actions alleging that the termination envisioned in Livernois had occurred. The group designated as the Sejman plaintiffs is composed of twelve individuals who, with one exception, have remained employed by PMP from 1982 until the present. These employees alleged that certain changes in PMP's benefits package indirectly terminated their previous employment on February 1, 1985. The second group of employees, designated as the Givins plaintiffs, based their claim for benefits on actual termination. Two of the Givins plaintiffs were discharged on March 8, 1985, for allegedly unsatisfactory work performance. The other two members of this group were terminated on April 19, 1985, on the basis of job elimination.[3]
 
 
 5
 Following discovery, Warner-Lambert moved for summary judgment in both the Sejman and Givins cases, contending that plaintiffs' common law breach of contract claims had been preempted by ERISA. Warner-Lambert further argued that its denial of severance benefits to former employees was neither arbitrary nor capricious as a matter of law and thus could not support a claim under ERISA.
 
 
 6
 The district court denied the motions for summary judgment. The court acknowledged that the broad scope of ERISA would normally preempt breach of contract claims of the type advanced by plaintiffs, but that in this instance, preemption was precluded by this Court's decision in Livernois. The district court reasoned that since Warner-Lambert had previously litigated the application of its severance pay contract without raising preemption and had "acquiesced" in this Court's "equitable solution," the law of the case doctrine now dictated that Warner-Lambert be bound by the Livernois solution. The district court concluded that allowing Warner-Lambert to assert ERISA preemption at this juncture would "render all prior proceedings meaningless" and "bestow upon a private litigant the power to ignore, and in effect overrule, the Fourth Circuit Court of Appeals."
 
 
 7
 At the request of the parties, the district court amended its order to state that its decision involved a controlling question of law as to which there is substantial ground for a difference of opinion. The amendment permitted Warner-Lambert to petition for leave to appeal pursuant to 28 U.S.C. Sec. 1292(b). The petition was granted by this Court on May 1, 1987. The Sejman and Givins cases were subsequently consolidated for appeal and both are now ripe for disposition.
 
 II.
 
 8
 On appeal, Warner-Lambert contends that the district court's denial of summary judgment was based upon both a misapplication of the law of the case doctrine and an insufficient appreciation of the broad preemptive scope of ERISA. Specifically, appellant argues that until this Court's 1985 decision in Holland v. Burlington Industries, 772 F.2d 1140 (4th Cir.1985), it was not settled that ERISA applied to severance pay arrangements. Since in Warner-Lambert's view, ERISA was neither asserted nor could reasonably have been asserted in the earlier Livernois litigation, the application of the statute never became part of the law of the case. Appellant also argues that even if the application of ERISA had in some fashion been involved in Livernois, the subsequent decision in Holland constituted a change in the law which is a recognized exception to the law of the case doctrine. Appellant also argues that the sweeping federal preemption embodied in the statute reflects a broad and clear congressional intent to which all courts must defer and which transcends discretionary doctrines such as law of the case. We find appellant's arguments persuasive.
 
 
 9
 In ERISA, Congress enacted in 1974 what has been fairly described as "the most sweeping federal preemption statute ever enacted by Congress." California Hospital Assoc. v. Henning, 569 F.Supp. 1544, 1546 (C.D.Cal.1983). A complex piece of legislation intended to federalize much of employee pension and benefit law, ERISA specifically covers "employee pension benefit plans," 29 U.S.C. Sec. 1002(2) and "employee welfare benefit" plans. 29 U.S.C. Sec. 1002(1). The full scope of the statute has evolved as courts have determined whether certain employer-employee arrangements were covered by ERISA.
 
 
 10
 Of particular and obvious significance to this appeal is the issue of severance pay. Until 1985, it was unsettled in this Circuit whether a severance pay provision was a mere "payroll practice" outside the operation of ERISA or a "welfare benefit" plan covered by the statute. The question was clearly answered, however, in Holland, where we held that ERISA preemption did apply to disputes over severance pay. We further concluded that severance benefits could be denied if the failure to pay was not "arbitrary and capricious." 772 F.2d at 1148.
 
 
 11
 In light of Holland, there is no question but that if the claims of the former Warner-Lambert employees had arisen initially in the present litigation, they would have been subject to ERISA. The district court concluded, however, that in this instance an essentially equitable doctrine of judicial procedure precluded the application of the federal statute. We disagree.
 
 
 12
 The law of the case doctrine is not an "inexorable command" but rather a prudent judicial response to the public policy favoring an end to litigation. White v. Murtha, 377 F.2d 428 (5th Cir.1967).[4] Clearly, courts could not perform their duties "satisfactorily and efficiently ... if a question once considered and decided ... were to be litigated anew in the same case upon any and every subsequent appeal." Great Western Tel. Co. v. Burnham, 162 U.S. 339, 344, 16 S.Ct. 850, 852, 40 L.Ed. 991 (1896). Accordingly, when a decision of an appellate court establishes "the law of the case," it "must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal ... unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." EEOC v. International Longshoremen's Assoc., 623 F.2d 1054 (5th Cir.1980). Although the doctrine applies both to questions actually decided as well as to those decided by "necessary implication," it does not reach "questions which might have been decided but were not." Copra, Inc. v. Ward Foods, Inc., 567 F.2d 1316 (5th Cir.1978).
 
 
 13
 We find but scant indication that any determination on the scope of ERISA was ever made in the Livernois litigation.[5] Certainly, as a totally separate and distinct issue, a ruling on ERISA was neither directly nor implicitly required in order for this Court to resolve the purely contractual issues raised in 1983.[6] Moreover, we cannot accept appellees' suggestion that Warner-Lambert's failure to assert federal preemption in the earlier case renders that default part of the law of the case. An omission may become part of the law of the case only if its subsequent assertion is an attempt to relitigate the ultimate issue previously decided. The ultimate, indeed the only issue, in Livernois, however, was contract. See Holland, 772 F.2d 1148 n. 6. Appellant's present claim of preemption does not challenge this Court's previous analysis. Rather, appellant contends only that the rights of the plaintiffs must now be weighed in light of a hitherto unexamined legal doctrine.[7]
 
 
 14
 Even were we to assume for purposes of this appeal that Warner-Lambert's failure to assert ERISA in Livernois could be brought under the general rubric of law of the case, it would nevertheless be error to refuse to apply the statute in the present litigation. A judicially created procedural doctrine cannot defeat the intent of Congress. When Congress preempts state law, it gives concrete expression to the constitutional authority granted by the Supremacy Clause of Article VI. Louisiana Public Service Comm'n v. FCC, 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). The effect of a preemptive statute is, therefore, quasi-jurisdictional. A state court confronted with a dispute governed by a preemptive federal statute would have no authority to adjudicate the matter other than in accordance with the statute. Kalb v. Feuerstein, 308 U.S. 433, 440, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940). Certainly, a federal district court sitting pursuant to diversity jurisdiction has no greater authority.
 
 
 15
 We conclude, therefore, that it was error for the district court to refuse to apply the standards provided in ERISA when weighing the claims of the former Warner-Lambert employees to severance pay. It does not follow, however, that our decision in Livernois has been overruled or has no relevance to the reexamination of appellees' claims on remand. In determining whether Warner-Lambert's present refusal to pay benefits is arbitrary or capricious, the district court should consider the totality of the circumstances, including the nature of the original contractual relationship between appellant and appellees. The district court should also weigh the implication of Warner-Lambert's apparent acquiescence in the result reached in Livernois.[8] We, of course, express no view with regard to the ultimate disposition of this matter. We are not convinced, however, that Warner-Lambert must automatically prevail simply because the claims against it must now satisfy the standards established in ERISA.
 
 III.
 
 16
 For the foregoing reasons, the judgment of the district court is reversed and this matter is remanded for additional proceedings consistent with this opinion.
 
 
 17
 REVERSED AND REMANDED.
 
 
 
 [1]
 The plaintiffs in that action were Douglas Livernois, Ronald Duchene, Ivan Christopherson, Thomas Givens, Urban G. Mitchell, Thomas McHugh, A.R. Trautwein, John Caputo, Clayton Robinson, Virginia Sejman and Douglas Dodds
 
 
 [2]
 Warner-Lambert's severance policy provided that "an employee terminated by the Company, as a result of job elimination, work performance, or other reasons of Company convenience" would be entitled to severance pay
 
 
 [3]
 The Sejman plaintiffs are Virginia M. Sejman, A.R. Trautwein, Thomas J. McHugh, Jr., Glenda Idle, Roy G. Cook, Joseph D. Dubuque, Robert C. Reese, Joe L. Norman, Morris Leister, Mary J. Miller, Raymond Bernhardt, and Lewis Lathern. The Givins plaintiffs are Thomas H. Givins, M.L. Brannon, John J. Caputo, and C.E. Robinson, Jr. Six of the plaintiffs in this matter, Sejman, McHugh, Givins, Trautwein, Caputo, and Robinson, were also plaintiffs in the Livernois case
 
 
 [4]
 In Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983), the Supreme Court observed that "law of the case is an amorphous concept ... [that] directs a court's discretion, ... [but] does not limit the tribunal's power."
 
 
 [5]
 There is admittedly a brief reference to ERISA at Livernois, 723 F.2d 1152-53 n. 6. That statement, however, merely expressed the mistaken assumption, later corrected in Holland, that ERISA did not apply to severance benefits
 
 
 [6]
 Appellees have repeatedly suggested in this appeal that they "won" the 1982-83 litigation. That is an overly-expansive view. If winning is defined as attaining a stated objective, then the Livernois plaintiffs certainly did not win, for they did not receive the severance benefits that they sought. Rather, this Court held only that plaintiffs retained rights under their contractual arrangement with their former employer which might ripen into an enforceable claim. The possibility that some other unforeseen operation of law might bar the contractual claim was not addressed
 
 
 [7]
 Appellees' reliance upon cases such as Zdanok v. Glidden Company, 327 F.2d 944 (2d Cir.1964), and Sorensen v. Pyrate Corp., 65 F.2d 982 (9th Cir.1933), is misplaced and illustrates their failure to appreciate this essential distinction in the law of the case doctrine. In Zdanok, the doctrine was invoked to prevent a defendant from reopening on the basis of new evidence its liability for breach of contract after a remand for a determination of damages. Similarly, in Sorensen, a defendant who had relied unsuccessfully upon an interpretation of contract language defense was not permitted on remand to contest its liability for breach of contract on the new theories of deceit, nonexistence of subject matter and lack of mutuality. In this case, appellant's claim of preemption may be determined without disturbing the Livernois assessment of contract rights. Both Zdanok and Sorensen are therefore inapposite
 
 
 [8]
 In Gilbert v. Burlington Industries, 765 F.2d 320 (2nd Cir.1985), the court held that an employer who had failed to comply with ERISA reporting and disclosure requirements could not be estopped from asserting federal preemption. The court held, however, that it was proper to consider whether the employer's conduct had "tainted" the subsequent refusal to pay benefits, thereby rendering the refusal arbitrary and capricious. 765 F.2d 328-29. A similar consideration of Warner-Lambert's prior conduct would certainly be appropriate