**In re FUND FOR A CONSERVATIVE MAJORITY, Debtor, Federal Election Commission, Amicus Curiae.**

**Bankruptcy No. 88–00924–A.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

May 8, 1989.

Lawrence M. Noble, Richard B. Bader, Jonathan A. Bernstein, Washington, D.C., for Federal Election Com'n.

George V. Biondi, Herge, Sparks, Christopher & Biondi, McLean, Va., for debtors.

Thomas A. Cox, Alexandria, Va., Office of the United States Trustee.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

This matter is before the Court on the United States Trustee's motion to dismiss or convert the Chapter 11 petition filed by Fund for a Conservative Majority ("FCM") on May 10, 1988. Various hearings were held on this motion and the matter continued for a ruling until April 25, 1989. Although the U.S. Trustee bases his motion on several grounds, the crux of his position is that Fund for a Conservative Majority, as a political committee, is ineligible for relief under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 101 *et seq.* In the alternative, the U.S. Trustee requests the conversion of the debtor's case to a Chapter 7. In support of the U.S. Trustee's motion, the Federal Election Commission ("FEC" or "Commission") has filed a brief *amicus curiae* detailing the Commission's position on the debtor's filing.

The debtor has responded to the motion to dismiss by noting first that the issue of

FCM's eligibility for relief under Chapter 11 has been resolved by this Court in an earlier adversary proceeding filed by the debtor against Southall Press, thereby establishing the "law of the case." In that adversary, in which the debtor sought injunctive relief against Southall Press, this Court granted permanent relief to the debtor (the return of a magnetic computer tape) and denied the defendant's motion to dismiss the chapter 11 petition with prejudice. *See* Adv.Pro. 88–0318–A.[1]

"[U]nder the doctrine of the law of the case, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." *Matter of Dowell,* 82 B.R. 998, 1005 n. 12 (Bankr.W. D.Mo.1987) (quoting 1B *Moore's Federal Practice,* ¶ 0.404[1] at 117 (2d ed.1984)). The doctrine differs from *res judicata* and collateral estoppel in that it is "not an 'inexorable command' but rather a prudent judicial response to the public policy favoring an end to litigation." *Sejman v. Warner–Lambert Co., Inc.,* 845 F.2d 66, 68 (4th Cir.1988). Accordingly, "a court that makes a decision has the power to reconsider it, so long as the case is within its jurisdiction." *Matter of Dowell,* 82 B.R. at 1009 (quoting 1B *Moore's Federal Practice* ¶ 0.404[1] at 118 (2d ed.1984)).

First, in view of the fact that the litigation between the debtor and Southall Press was conducted in a separate adversary proceeding, the final order entered in that matter was not in the "same case," thereby precluding the application of the "law of the case" to the issue at hand. *See In re Staff Mortgage & Inv.,* 625 F.2d 281, 283 (9th Cir.1980) (separate proceeding with different plaintiffs did not constitute "same case" for purpose of applying law of case doctrine); *In re Kenval Mktg. Corp.,* 69 B.R. 922, 926 (Bankr.E.D.Pa.1987) (underly-

---

1. Reviewing briefly the circumstances of that adversary, the debtor filed a motion for preliminary injunction to regain possession of a magnetic computer tape containing a list of FCM donors. Although Southall Press *did* file a motion to dismiss alleging FCM's ineligibility under chapter 11, it appears from the record that the Court did not make a ruling on the merits of

that motion. Rather, the order resolving the adversary, which was drafted by counsel for the debtor, notes the failure of Southall Press to appear on the day of the hearing on the permanent injunction and states merely that the motion to dismiss be dismissed with prejudice. *Fund for A Conservative Majority v. Southall Press,* Adv.Pro. 88–0387–A.

ing bankruptcy case and an adversary proceeding are distinct legal actions). Secondly, as noted in the order drafted by counsel for the debtor, it appears that the dismissal of the motion filed by Southall Press was granted on the basis of the defendant's *nonappearance* and not on the merits of the defendant's motion. As noted by the Fourth Circuit, while the doctrine of the law of the case applies both to "questions actually decided as well as to those decided by 'necessary implication,' it does not reach questions which might have been decided but were not." 845 F.2d at 69 (citations omitted). Finally, even if the adversary and main case could be construed as being one and the same case, and the issue had been litigated fully, this Court has the power to reconsider the issue as long as the issue has not been addressed on appeal and this Court has jurisdiction over the main case. *See Matter of Dowell*, 82 B.R. at 1009.

Consequently, it is the ruling of this Court that the doctrine of law of the case does not apply to the matter at hand and assuming *arguendo* that it did, this Court is exercising its authority to review its prior ruling at this time.

We now address the ultimate issue of whether the debtor, Fund for A Conservative Majority, is eligible for relief under Chapter 11 of the Bankruptcy Code. The U.S. Trustee, together with the Federal Election Commission, do not maintain that the debtor is ineligible for relief based on provisions of the Bankruptcy Code itself. Rather, they have noted that Congress in devising Chapter 11 of the Code did not "contemplat[e the] application of Chapter 11 to political committees[,]" and have asserted that the debtor may be ineligible for chapter 11 relief in view of the exclusive "debt settlement procedures" provided by

the Federal Election Campaign Act ("FECA" or "the Act"), the enforcement of which is the responsibility of the Federal Election Commission ("FEC").

The debtor has responded to the motion to dismiss in part by noting that the "Bankruptcy Code takes precedence over the Commission's administrative regulations for debt settlement, and the jurisdiction of a Constitutional Article III court is superior to that of the statutory agency." [2] If such precedence is not absolute, however, the debtor has suggested that it can comply with the FEC's reporting requirements by submitting the approved chapter 11 plan to the FEC for its review.

We find that under the applicable provisions of the Code which set out the eligibility requirements for filing, 11 U.S.C. §§ 109 and 101, Fund for a Conservative Majority is not prohibited from filing a petition for relief under Chapter 11.[3] While the legislative history of chapter 11 may reveal that Congress had not contemplated the filing of petitions by political committees at the time of the Code's inception, deprivation of relief in this Court should not be sanctioned absent *clear affirmative Congressional intent. See In re Markunes*, 78 B.R. 875, 880 (Bankr.S.D. Ohio 1987) ("There is no doubt that chapter 11 is *primarily* designed for business but a primary purpose does not, of course, imply an exclusive purpose[,]" thus determination that all consumer debtors are ineligible for reorganization is improper absent "clear Congressional intent."); *accord Grundy Nat'l Bank v. Shortt*, 80 B.R. 802, 806 (W.D.Va.1987) (court unwilling to go beyond plain meaning of § 109(d) to preclude wage earners from filing under chapter 11 without support from legislative history of chapter 11); *In re Gregory*, 39 B.R. 405, 408 (Bankr.M.D.Tenn.1984) ("In the face of obvious Con-

**2.** Statement of the Debtor to the Federal Election Commission. Filed January 26, 1989.

**3.** Section 101(12) defines a "debtor" as a "person or municipality concerning which a case under this title has been commenced[.]" 11 U.S.C. § 101. We turn, then, to section 109(d) which provides that "[o]nly a person that may be a debtor under chapter 7 of this title, *except* a stockbroker or a commodity broker, and a rail-

road may be a debtor under chapter 11 of this title." 11 U.S.C. § 109(d) (emphasis supplied). The United States Trustee has conceded that the debtor is eligible for relief under chapter 7 of the Bankruptcy Code. Thus, we need only examine whether political action committees are expressly excluded from filing petitions under chapter 11 and under § 109(d) they are not.

gressional exactitude in drafting the eligibility criteria in § 109, this court will not imply the intent to exclude wage earning debtors" from chapter 11 relief). The policy considerations cited by the U.S. Trustee, (that political committee debtors who file under chapter 11 are deceiving new donors by failing to inform them of the pending petition, and the possibility of abusive filings) and the FEC (alleging unfair advantage of chapter 11 political committees allowed to compromise debts while others must pay in full, and the potential for indirect corporate subsidization of a political committee's speech) may be valid, but must be proffered to the appropriate body with legislative or rulemaking capabilities.

We note that the FEC has cited numerous statutes and regulations which set forth the rigid reporting requirements imposed on political action committees.[4] At the present time, however, these rules and regulations appear to facilitate "monitoring" by the FEC, rather than form a mandatory debt resolution mechanism. *Accord Spannaus v. Federal Election Commission,* 641 F.Supp. 1520, 1530 (S.D.N.Y. 1986), *aff'd,* 816 F.2d 670 (2d Cir.1987) ("Although the Commission has indicated that it will not resolve creditor disputes, it still has responsibility for ensuring that debts are correctly reported."). For example, if a creditor does not settle its debt for "less than [the] reported amount or value," the debtor would not be required to report the management of that debt under chapter 11. 2 U.S.C. § 434(b)(8). Similarly, the FEC concedes that debts subject to a *bona fide* dispute, which are resolved after litigation, need not be reported as a debt settlement.[5]

In addition, despite the provisions contained in "Commission Directive No. 3" which provides for FEC review, the FEC itself states in its discussion of *proposed* rules that:

> [t]he Commission has not 'approved' or 'disapproved' debt settlement statements in the past. Nonetheless, comments are sought as to whether specific approval or disapproval should be granted to *future* debt settlement plans and what consequences should flow from such approval or disapproval, particularly in situations where creditors may disagree with certain aspects of the settlement plans.

*See* Notice of Proposed Rail [11 CFR Parts 112, 114, and 116], 53 Fed.Reg. 49,193, 49,-194 (1988) (proposed November 30, 1988) (emphasis supplied); *see also* Federal Election Commission Directive, No. 3, *supra* at note 4.

The FEC also cites cases in support of the proposition that "a precisely drawn, detailed statute pre-empts more general remedies[,]" *see e.g., Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976),[6] and cases which indicate specifically that the FEC has exclusive jurisdiction to enforce the provisions of the FECA, *see e.g., National Republican Congressional Comm. v. Legi–Tech Corp.,* 795 F.2d 190, 194 (D.C. Cir.1986) (noting "Congress' explicit decision to vest the Commission with 'primary jurisdiction' over civil enforcement.").[7] These cases while indicative of a general rule of statutory construction, and the deference that courts have shown to the FEC with regard to the civil enforcement of the

---

**4.** *See* Federal Election Campaign Act of 1971, (codified as amended at 2 U.S.C. §§ 431–455 (1988)); Federal Election Commission Regulations, 11 C.F.R. §§ 1–115; Federal Election Commission Directive, No. 3, (effective date July 22, 1982).

**5.** *Amicus Curiae* brief for Federal Election Commission at 9 n. 3.

**6.** *See also, Radzanower v. Touche Ross Co.,* 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976) (where there is no clear intention otherwise, specific statute will not be controlled or nullified by a general one, regardless of priority of enactment); *Preiser v. Rodriguez,* 411 U.S. 475, 487–90, 93 S.Ct. 1827, 1835, 36 L.Ed.2d

439 (1973) (determining that broad language of § 1983 not conclusive of issue involving specific federal *habeas corpus* statute); *Stewart v. Smith,* 673 F.2d 485, 492 (D.C.Cir.1982) (when one statute speaks in general terms when other is specific, conflicting provision may be reconciled by carving out exception from more general enactment for more specific statute).

**7.** *See also, Galliano v. United States Postal Service,* 836 F.2d 1362, 1368 (D.C.Cir.1988) (Federal Election Commission shall have exclusive jurisdiction with respect to the civil enforcement or FECA).

FECA, are not dispositive of the matter at hand, which relates to the exclusive jurisdiction of this Court to adjudicate petitions filed in bankruptcy.[8] *See In re Shelby County Healthcare Services of AL, Inc.,* 80 B.R. 555, 560 (Bankr.N.D.Ga.1987) ("Congress has vested original and exclusive jurisdiction of a debtor, the estate, all assets and all liabilities in the district courts, or by reference in the bankruptcy court.")

The above statutes and cases do, however, indicate a need for the FEC to participate in this case by reviewing the plan submitted by the debtor. *See In re Shelby County,* 80 B.R. at 560 ("Where two statues deal with the same subject matter and conflict, they are to be harmonized where possible to preserve their basic sense and purpose."). All the concerns of the Commission then, regarding inappropriate discharges and debt settlements would be addressed. As noted in the Commission's brief on page 7, while 11 C.F.R. § 114.10(b) precludes a corporation from forgiving or settling debts for less than the amount owed, subsection (c) permits the settlement or forgiveness of debts which have been treated in a "commercially reasonable manner." 11 C.F.R. §§ 114.10(b), (c). The Commission would have a full opportunity to review all settlements to ensure its compliance with § 114.10(c) and all other applicable rules.

The Commission's concern that the filing of a chapter 11 petition by a political action committee and a review of the chapter 11 plan *after* the approval of creditors may "undermine the Commission's ability to police ... political committees' activities[,]" may indeed be what has prompted the Commission to propose new rules. *See* Notice of Proposed Rule [11 CFR Parts 112, 114, and 116], 53 Fed.Reg. 49,193 (1988) (pro-

posed November 30, 1988). This Court is unwilling, however, to consider what has not been promulgated, especially in view of the uncertainty of the application and substance of the new rules. Certainly if new rules prohibiting the filing of chapter 11 petitions by political committees were created and given retroactive application, this Court, if requested to do so could reconsider its ruling at that time.

There being no prohibition against a chapter 11 filing by this debtor, we need not consider whether a conversion to Chapter 7 is appropriate. Accordingly, we deny the U.S. Trustee's motion to dismiss the instant petition.

An appropriate order will enter.

---

**8.** "Civil enforcement" of the FECA generally has been construed by courts to refer to the FEC's exclusive jurisdiction to address *violations* of the FECA. *See e.g., United States Defense Comm. v. Federal Election Comm'n,* 861 F.2d 765 (2d Cir.1988) (describing function of commission in terms of addressing violations of FECA and related statutes); *Common Cause v. Schmitt,* 512 F.Supp. 489, 502 (D.D.C.1980)) (violations of election laws must first be brought before the FEC as within that agency's exclusive jurisdiction) (citing *Carter–Mondale Reelection Comm., Inc. v. Federal Election Comm'n,* 642 F.2d 538 (D.C.Cir.1980)). In the instant case, while the FEC anticipates a conflict between the FECA and provisions of the Bankruptcy Code, it has not directed this Court's attention to a specific violation of the FECA by the debtor at this time.