889 F.2d 1346
 58 USLW 2335, 11 Employee Benefits Ca 2262
 Virginia M. SEJMAN; A.R. Trautwein; Thomas H. Givens;
Thomas J. McHugh, Jr.; Glenda Idle; Roy G. Cook; Joseph
D. Dubuque; C. Robert Reese; Joe L. Norman; Morris
Leister; Mary J. Miller; Raymond G. Bernhardt; Lewis
Lathren, on behalf of themselves and all others similarly
situated, Plaintiffs-Appellants,
v.
WARNER-LAMBERT COMPANY, INC., a corporation, Defendant-Appellee.
Thomas H. GIVENS; M.L. Brannon; John J. Caputo; C.E.
Robinson, Jr., Plaintiffs-Appellants,
v.
WARNER-LAMBERT COMPANY, INC., Defendant-Appellee.
 Nos. 88-2606, 88-2607.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 13, 1989.
Decided Nov. 24, 1989.
Rehearing and Rehearing En Banc Denied Jan. 5, 1990.
 
 Clarence Rauch Wise (Wise & Tunstall, on brief), for plaintiffs-appellants.
 Margaret Blair Soyster (Rogers & Wells, New York City, O.W. Bannister, Jr., Hill, Wyatt & Bannister, Greenville, S.C., on brief), for defendant-appellee.
 Before ERVIN, Chief Judge, and HALL and WILKINSON, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 These cases, consolidated on a prior appeal, arose from two suits brought against Warner-Lambert by former employees seeking severance pay from that company. We affirm the judgment of the district court that appellants have no entitlement to severance benefits under Warner-Lambert's severance policy. They must look instead to the severance policy of the company to whom their division was sold and for whom they continued to work.
 
 I.
 
 2
 Appellants worked in the Medical-Surgical Division of Warner-Lambert. That division was sold by Warner-Lambert as a going concern on January 20, 1982 to Professional Medical Products, Inc. (PMP). Both groups of plaintiffs in these consolidated cases claimed entitlement to severance pay from Warner-Lambert under its 1981 severance policy. The severance policy provided in relevant part:
 
 
 3
 Purpose: To assure fair treatment to an employee terminated by the Company as a result of job elimination, work performance or other reasons of Company convenience except for violation of Company rules or regulations....
 
 
 4
 In Livernois v. Warner-Lambert, 723 F.2d 1148 (4th Cir.1983), this court found that although the sale of the division did not constitute "job elimination" under this severance policy, Warner-Lambert nonetheless bore a contractual obligation under state law toward its former employees, which would ripen upon termination. Id. at 1156.
 
 
 5
 Following the sale of their division, plaintiffs continued to work for PMP in the same job, at the same location, with the same seniority, at the same or higher salaries, and with fully comparable employee benefits. At the time of sale, Warner-Lambert sought assurances from PMP that all employees transferred from the Warner-Lambert payroll to the PMP payroll would become entitled to severance pay and other benefits from PMP on a basis comparable to existing policies. Benefit computations would be based upon the dates of an employee's original employment, either with Parke-Davis, with whom Warner-Lambert had merged in 1970, or with Warner-Lambert itself. Though the overall level of employee benefits remained comparable to that existing at the time of the sale of the division, PMP instituted various changes in its benefits package from time to time. One such change occurred in February 1985, when benefits under its severance policy were reduced.
 
 
 6
 Plaintiffs returned to federal court in mid-1985, claiming that they had now been "terminated" as required by the 1981 severance policy and that Warner-Lambert owed them severance pay under its terms. These plaintiffs were divided into two groups: the Sejman and Givens plaintiffs. The Sejman plaintiffs claimed job elimination as of February 1, 1985 based on the change in severance benefits. The Givens plaintiffs claimed job termination after they were terminated by PMP and failed to receive severance pay benefits equal to those they would have received under the 1981 Warner-Lambert policy.
 
 
 7
 As to the Givens plaintiffs, Caputo and Robinson were terminated by PMP on March 8, 1985 for unsatisfactory work. On April 19, 1985 Givens and Brannon were terminated by PMP due to job elimination. Givens and Brannon received $15,574 and $10,868 respectively in severance pay from PMP in accordance with the PMP severance pay policy. Caputo and Robinson received no explicit severance payment. However, in exchange for "any and all claims for relief or damages, arising out of ... (their) employment with Professional Medical Products, Inc.," they received payments of $30,000 and $25,000 respectively.
 
 
 8
 Following completion of discovery, Warner-Lambert moved for summary judgment on the grounds that plaintiffs' common law breach of contract claims had been pre-empted by ERISA, 29 U.S.C. Secs. 1001, et seq., and that Warner-Lambert's denial of severance benefits was neither arbitrary nor capricious and thus could not support a claim under that statute. The district court, however, held that this court's earlier decision in Livernois precluded preemption of plaintiffs' claims by ERISA. This court reversed, holding that plaintiffs' state law claims were indeed preempted by ERISA and remanded for a determination of whether "Warner-Lambert's present refusal to pay benefits [was] arbitrary or capricious" under that statute. Sejman v. Warner-Lambert Co., 845 F.2d 66, 70 (4th Cir.1988). That determination was to be informed by "the totality of the circumstances, including the nature of the original contractual relationship between appellant and appellees." Id. at 70.
 
 
 9
 On remand, the district court granted defendant's motion for summary judgment, finding that Warner-Lambert's denial of severance benefits was not arbitrary and capricious. While the Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, --- U.S. ----, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), requires that a review of the plan administrator's actions be de novo,[1] we think it clear that Warner-Lambert's action was justifiable under the de novo standard. Much of the reasoning of the district court stands independently of the standard of review, and we affirm its well-considered decision.
 
 II.
 
 10
 Appellants argue that Warner-Lambert had a continuing obligation to pay them severance benefits under the 1981 severance policy and that they merely awaited "termination" before becoming eligible to collect under that policy. We hold, however, that once PMP took over management of the Medical-Services division, its severance policy, not that of Warner-Lambert, was controlling. We reject plaintiffs' contention that they retained either a continuing right to severance payments under the 1981 policy or that they were wrongly denied such payments at the time of divestiture.
 
 
 11
 This circuit has squarely held that "[t]he accrued benefits secured by ERISA do not encompass unfunded, contingent early retirement benefits or severance payments. The Act was not designed to prohibit modifications of these ancillary benefits." Sutton v. Weirton Division of National Steel Corp., 724 F.2d 406, 410 (4th Cir.1983) (citing H.R.Conf.R. No. 1280, 93d Cong., 2d Sess. 273, reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 5038, 5054; H.R.Rep. No. 807, 93d Cong., 2d Sess. 60-61, reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4670, 4726). See also Viggiano v. Shenango China Div. of Anchor Hocking Corp., 750 F.2d 276, 279-280 (3d Cir.1984). "Congress expressly exempted employee welfare benefit plans from stringent vesting, participation, and funding requirements. Congress recognized the differences between welfare benefit plans and pension plans, and we discern no basis for finding mandatory vesting in ERISA of retiree welfare benefits." In re White Farm Equipment Co., 788 F.2d 1186, 1193 (6th Cir.1986). Because, under ERISA, severance benefits are contingent and unaccrued, an employer may unilaterally amend or eliminate the provisions of a severance plan, which is usually funded solely by the employer in any event. Young v. Standard Oil (Indiana), 849 F.2d 1039, 1045 (7th Cir.1988).
 
 
 12
 Nothing in ERISA thus required Warner-Lambert to pay plaintiffs at 1981 benefit levels or to provide continuing coverage for them under its severance policy. Plaintiffs' interest in the severance plan did not vest simply because they once were covered by it. In August 1982, Warner-Lambert amended its policy on severance pay to make even more explicit that severance benefits would not be available to an employee who had the opportunity to continue work with a company that acquired a Warner-Lambert division. This Warner-Lambert had a right to do. While the employer acts as a fiduciary in administering plan assets, it violates no fiduciary duty in amending a plan involving non-vested interests. Young, 849 F.2d at 1045. Business decisions, including corporate actions by plan administrators reducing the amount of unaccrued benefits, have routinely been held to be non-fiduciary. Berlin v. Michigan Bell Telephone Co., 858 F.2d 1154, 1163 (6th Cir.1988); West v. Greyhound Corp., 813 F.2d 951, 955-56 (9th Cir.1987). ERISA "does not impress a trust" upon any employer's corporate treasury for the payment of contingent benefits, Sutton, 724 F.2d at 411, and plaintiffs are foreclosed from claiming such a trust at Warner-Lambert.
 
 
 13
 The divestiture of the Medical-Surgical Division, with the subsequent change in plan administrators, did not change plaintiffs' position with regard to severance payments. Cf. Mead Corporation v. B.E. Tilley, --- U.S. ----, 109 S.Ct. 2156, 104 L.Ed.2d 796 (1989) (29 U.S.C. Sec. 4044(a)(6) of ERISA does not create benefit entitlements to unaccrued early retirement benefits in event of voluntary plan termination by an employer after sale of subsidiary). As Warner-Lambert could have changed its severance pay policy in 1985 had it been appellants' employer at the time, so too could PMP reduce severance pay benefits. Indeed, plaintiffs must look to the plan of their new employer, PMP, to determine when they were terminated and what benefits they are entitled to recover.
 
 
 14
 To vest severance pay benefits in the manner appellants suggest would require companies, after the sale of subsidiaries or divisions, to monitor the future careers of all their former employees in order to determine when and why they might eventually leave work. "[T]he 'vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income.' " Sutton, 724 F.2d at 410 (citing H.R.Rep. No. 807, 93rd Cong., 2d Sess. 60, reprinted in 1974 U.S.Code Cong & Admin.News 4890, 4935). Requiring such an ongoing obligation for severance payments after employees are employed elsewhere could discourage employers like Warner-Lambert from seeking to ensure that their former employees retain their old positions or encourage such employers to forego severance payments altogether. Ft. Halifax Packing Co. v. Coyne, 482 U.S. 1, 13, 107 S.Ct. 2211, 2218, 96 L.Ed.2d 1 (1987) ("Faced with the difficulty or impossibility of structuring administrative practice according to a set of uniform guidelines, an employer may decide to reduce benefits or simply not to pay them at all").
 
 
 15
 In sum, plaintiffs' contention that Warner-Lambert was under a continuing obligation to award them severance pay benefits at the time of their termination by PMP fails to conform to the principles of ERISA which this court has held must now govern this case. Sejman, 845 F.2d at 70. By contrast, defendants' contention that plaintiffs were never terminated under the terms of the 1981 Warner-Lambert policy remains correct. Livernois, 723 F.2d at 1156.
 
 
 16
 Under that policy, the claimant had to be both an employee of the company and "terminated by the Company as a result of job elimination, work performance, or other reasons of Company convenience" (emphasis added). Yet any termination that took place was done by PMP, not by Warner-Lambert. We uphold, as did the district court, Warner-Lambert's interpretation of its 1981 severance pay policy to exclude from the definition of job termination those who continued working at the same job, in the same facility, at the same tasks for comparable rates of compensation and benefits. See Holland v. Burlington Industries, Inc., 772 F.2d 1140, 1149 (4th Cir.1985), aff'd sub nom. Brooks v. Burlington Industries, Inc., 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986) (employees who continued to work in their old jobs upon sale of division found to be outside the scope of "job elimination" under severance pay policy).
 
 
 17
 Courts should hesitate to impose upon companies unwritten contractual liabilities. Payment of severance benefits here would constitute a significant, unforeseen, and costly liability. Further, as the district court noted, payment from Warner-Lambert would be the equivalent of a windfall recovery for plaintiffs who are covered by their present employer's severance policy. In the case of the Sejman plaintiffs, supplementing their salary checks from PMP with severance payments from Warner-Lambert would seem even more of a windfall, because it would award severance pay to persons who never changed their jobs and were never out of work.
 
 
 18
 Warner-Lambert's denial of severance benefits to plaintiffs was also consistent with its own past practice. The district court found that in more than fifty-five divestitures over the course of more than thirty years, Warner-Lambert had never paid severance benefits to individuals who had the opportunity to continue working with an acquiring company, even if those individuals were ultimately terminated by the acquiring company or encountered a reduction in such benefits after the acquisition. Evidence that the denial of benefits in this case was consistent with the general practice of Warner-Lambert further substantiates the view that Warner-Lambert's conduct did not implicitly represent to plaintiffs any unwritten policy of providing severance benefits upon divestiture if employment continued. See Schwartz v. Newsweek, Inc., 827 F.2d 879, 883 n. 3 (2d Cir.1987).
 
 
 19
 Finally, although Warner-Lambert was also subject to certain disclosure requirements, 29 U.S.C. Secs. 1021-1031, the district court found that Warner-Lambert had circulated copies of its severance policy to employees and that those employees were well aware of its existence. We affirm its holding that any procedural violations of ERISA "clearly worked no substantive harm" on plaintiffs and did not compare with the flagrant violations committed in Blau v. Del Monte Corp., 748 F.2d 1348 (9th Cir.1985).
 
 III.
 
 20
 We recognize that this litigation has pursued a long and tortuous course. It began when the governing principles of federal preemption and benefit plan administration were less clear than they are today. To hold Warner-Lambert liable in this case would do violence both to Supreme Court and circuit precedent. It would be inconsistent with the character of severance pay plans as described by this circuit in Sutton, 724 F.2d at 410, with the principles of federal preemption of state contract law under ERISA as enunciated by the Supreme Court, Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), see also Shaw v. Delta Air Lines, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), and with the controlling effect accorded ERISA by Sejman in this very case. These principles point to one conclusion. Most plaintiffs here have or will recover severance pay at an appropriate time, but it is to the policy of their present employer that they must look.
 
 
 21
 AFFIRMED.
 
 
 22
 K.K. HALL, Circuit Judge, concurring in part and dissenting in part:
 
 
 23
 I concur in the majority opinion to the extent that the dismissal of the Sejman plaintiffs' claims is affirmed. I respectfully dissent with respect to the Givens plaintiffs, however, because I believe the majority opinion overstates the reach of our prior decision in Sejman v. Warner-Lambert Co., 845 F.2d 66 (4th Cir.1988) [Sejman I ].
 
 
 24
 In Sejman I, we remanded the case to allow the district court to review Warner-Lambert's denial of benefits to its former employees in light of ERISA. On remand, the district court focused on the Warner-Lambert plan's limitation of ccverage to "all full-time exempt employees" and dismissed the claims because the plaintiffs were obviously no longer Warner-Lambert employees. In Sejman I, however, we did not overrule that portion of Livernois v. Warner-Lambert Co., Inc., 723 F.2d 1148 (4th Cir.1983), which held that, notwithstanding the sale of the division to PMP, a contract existed between Warner-Lambert and its former employees for the payment of severance pay. Warner-Lambert's belated claim of ERISA preemption did "not challenge this Court's previous analysis" in Livernois that such a contract existed. Sejman I, 845 F.2d at 69. The Sejman I panel also noted that the preemption claim could be determined "without disturbing the Livernois assessment of contract rights." Id. at n. 7. The majority, however, attaches no significance to this holding and, instead, decides the case as if these opinions had never been written. The proper analysis should be whether the former employees, considered as still being covered by Warner-Lambert's severance pay policy, would be eligible for benefits in light of the employment-related events at PMP.
 
 
 25
 The district court employed an analysis which essentially holds that no Warner-Lambert employee who transferred to PMP after the sale of the Medical-Surgical Division could ever receive severance pay from Warner-Lambert. The majority's adoption of the analysis employed by the lower court flies in the face of our specific refusal in Sejman I to overturn the Livernois holding that there existed a contract between Warner-Lambert and its former employees. The contract which was found in Livernois and which survived Sejman I bound Warner-Lambert to provide benefits under its 1981 severance pay policy to those employees who transferred to PMP. Eligibility for benefits is clearly governed by ERISA under the de novo standard enunciated in Firestone Tire and Rubber Co., Inc. v. Bruch, --- U.S. ----, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), but the district court was not free to reexamine the viability of the severance pay contract itself under ERISA.
 
 
 26
 Nothing in the ERISA statutes prohibits a company from contracting, as part of a sale of a division to another company, to bind itself to the payment of severance payments to employees who choose to accept employment with the successor company. By inducing the employees to transfer to PMP, Warner-Lambert was able to better guarantee to PMP that the Medical-Surgical Division's employees would accept new jobs with PMP. As the court noted in Livernois, the purchase price paid by PMP was probably enhanced in return for Warner-Lambert's assurances that PMP was getting a well-trained group of employees. 723 F.2d at 1151 n. 5. In recognition of the primary purpose of severance pay, we held in Livernois that the obligation of Warner-Lambert would not ripen until the former employees had actually suffered a "job elimination" within the meaning of the then-current Warner-Lambert severance pay policy. Id. at 1157. The majority now completely overrules Livernois and implies that a company may not, under ERISA, contract with employees to provide an incentive to such employees to accept positions with a successor company. ERISA preemption, however, does not compel this result.
 
 
 27
 In the instant case, the Sejman plaintiffs (except a single retiree) continued in their employment at PMP. The district court found that the level of benefits remained comparable to those existing at Warner-Lambert as of January 20, 1982. Clearly no "job eliminations" had occurred under the 1981 severance pay policy at Warner-Lambert. Livernois, 723 F.2d at 1156. I concur, therefore, in the lower court's order to the extent that these plaintiffs' claims were dismissed.
 
 
 28
 The Givens plaintiffs' claims present a different situation. Caputo and Robinson were terminated by PMP, purportedly for unsatisfactory work performance. Under Sejman I, the district court should have reviewed these claims to determine only whether or not the employees would have received severance pay under the 1981 Warner-Lambert policy if they had been fired by Warner-Lambert for the reasons given by PMP. Givens and Brannon were terminated due to job elimination. This would appear to entitle them to benefits under Warner-Lambert's 1981 policy. I would reverse the district court's order dismissing the claims of the Givens plaintiffs and remand for reconsideration. Such reconsideration, moreover, should consider the claims as if the 1981 Warner-Lambert severance pay policy still applied to them. If Warner-Lambert would have granted severance pay under the same circumstances, then the claimant should be awarded the difference between what the Warner-Lambert policy would have paid and what PMP actually paid.
 
 
 29
 The majority correctly notes that severance pay benefits are, under ERISA, contingent and unaccrued and, therefore, a company may unilaterally amend a severance pay plan's provisions. At 1348. Livernois, however, squarely held that the sale of the division to PMP was accompanied by a contractual agreement between Warner-Lambert and its employees to maintain coverage under the then-current plan in effect at Warner-Lambert. Sejman I did not disturb this holding, nor does ERISA compel us to overturn it. Until the court sitting en banc decides otherwise, that decision remains the controlling one in this case.
 
 
 
 [1]
 Under Firestone Tire & Rubber Co. v. Bruch, --- U.S. ----, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that the standard for review is de novo unless the benefit plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms. ERISA defines a fiduciary as one who "exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. Sec. 1002(21)(A)(i). Under the plan no such discretionary authority was provided to the administrator. Eligibility and the extent of benefits were determined by formulas based upon age and years of service. Therefore de novo review of the plan administrator's action is the appropriate standard