941 F.2d 1206
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Donnie R. FINLEY, Ralph E. Adams, Minnie R. Aiken, Jacob F.
Anthony, Johnny F. Armstrong, Laura T. Armstrong, Larry P.
Arnold, John L. Austin, Larry F. Austin, Harold L. Ball,
Terry L. Ballard, T.L. Ballew, Shirley H. Barton, Donald E.
Batson, Joanne P. Beresh, Luree Blassingame, Libby M.
Bracken, Roy E. Brown, Mary C. Bruce, Barbara E. Bruster,
Hazel M. Bryant, Rodger L. Burton, Edith E. Butler, Lela M.
Butler, Roy S. Cagle, Julia L. Carter, George D. Carter,
Jr., Gene C. Casey, Lewis E. Casey, Hazel T. Channell, Harry
J. Cline, Dorothy B. Clinkscales, Gene L. Conwell, Marie R.
Creamer, Raymond P. Crone, Martha A. Cureton, Emmett B.
Dailey, Lois S. Davis, James E. Day, Eliza Dennis, James H.
Durham, Juanita Durham, James M. Edens, Faye Elginbates,
Mahlon C. Ellison, Eunice A. Evans, Lee J. Farmer, Maryland
J. Farmer, Esther L. Ferguson, Heartie M. Ferguson, Jerry Q.
Finley, Robert D. Fisher, Jimmy R. Foster, Azalee M.
Fredell, Julia M. Gallimore, Virginia Garrett, Personal
Representative of the Estate of David M. Garrett, Shirley M.
Garrett, James M. Gilliland, Fannie K. Graffinreed, George
B. Grant, Herman D. Grant, Wayne D. Grant, William R. Grant,
Charles L. Gray, John D. Griffin, Alpha H. Grubbs, Doris M.
Hamer, Margaret G. Harmon, Frances Harrison, Michael F.
Howard, Barbara M. Hunt, Odell Hunter, John R. Hutchins,
Nellie K. Hutchens, Larry E. Hutchins, Lois E. Irby, Melvin
C. Irby, Charles G. James, Vivian W. Jenkins, Dorothy G.
Johnson, Beattie G. Jones, Ella M. Jones, Cal Jones, Jr.,
Connie J. Kane-Maguire, Jack A. Kelley, Madge F. Kirby, Eff
Knight, Jr., Henry A. Kowaleski, Geraldine Laster, Shirley
A. Laster, Roy J. Lesley, Charles Q. Lister, Bobbie P.
Lyons, Warren J. Mahaffey, Barbara R. Manley, Donald E.
Mason, Julia E. McGee, Elberta McKelvie, Curtis E. McKenzie,
Ann D. McMakin, Vernon L. McMakin, Betty M. Melton, Franklin
W. Mitchell, Merle Mitchell, Buddy W. Mull, Carolyn A.
Neely, Betty J. Nicholson, Harold Odom, Steven F. Payne,
Fred N. Peace, Joseph Phelps, Shelby M. Powell, Janet N.
Pritchett, Mary E. Pruitt, Margaret J. Reed, Alphesus W.
Rentz, Ruby C. Rice, William E. Riddle, Sylvia D. Roach,
Joyce T. Robison, Susie J. Rosemond, Leroy Sanders, Essie S.
Simmons, Brenda J. Simpson, James E. Sims, Jurline Sims,
Bennie L. Smith, Daisy S. Smith, John T. Smith, Larry K.
Smith, John A. Spillers, Roy M. Spurgeon, Margaret E.
Starks, Willie L. Stephens, Mary E. Sweeney, William R.
Taylor, Edward W. Thompson, Bobby L. Tolbert, Daisy V.
Tolbert, Mary A. Turner, Frances G. Ware, Linda D. Ware,
Beedie D. Watson, Clarence L. Webb, Sally M. Webb, Mildred
B. Weeks, David M. Weisner, Sanford R. Welborn, Robert G.
Wheeler, Benjamin L. Williams, James O. Williams, Martha C.
Williams, Martha M. Williams, Ricky D. Williams, Patricia
B.B. Wilson, Phillip M. Witham, Mary H. Wofford, Cornell
Wrice, Jr., Gloria G. Young, Clifton O. Zimmerman,
Plaintiffs-Appellants,
v.
HOECHST CELANESE CORPORATION, Defendant-Appellee.
 No. 90-2423.
 United States Court of Appeals, Fourth Circuit.
 Argued March 4, 1991.
Decided Aug. 21, 1991.
 
 Appeal from the United States District Court for the District of South Carolina, at Greenville. Joseph F. Anderson, Jr., District Judge. (CA-89-1517-6-17)
 Susan Herdina, Bonds & Herdina, Charleston, S.C., (Argued), for appellants; A.D. Orander, Jr., Easley, S.C., Joseph G. Wright, III, Wright and Trammell, Anderson, S.C., on brief.
 Madison Baker Wyche, III, Ogletree, Deakins, Nash, Smoak & Stewart, Greenville, S.C., (Argued), for appellee; William H. Floyd, III, Glenn R. Goodwin, Ogletree, Deakins, Nash, Smoak & Stewart, Greenville, S.C., on brief.
 D.S.C.
 AFFIRMED.
 Before CHAPMAN, Senior Circuit Judge, TERRENCE WILLIAM BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation, and FRANKLIN T. DUPREE, Jr., Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This is an appeal by a class of plaintiffs, who are former employees of the Celanese Corp., from the trial court's granting of summary judgment against them on their claims for additional separation pay. We find that the trial court properly interpreted the contract involved in these claims and correctly held that the benefits involved in this separation from employment were not protected by the Employee Retirement Income Security Act and we therefore affirm.
 
 I.
 
 2
 Plaintiffs are 169 former employees of Celanese Corp. ("Celanese") who worked in Celanese's Greenville, S.C., plant. In late 1984, Celanese announced that it would close the Greenville plant. The phaseout was to take place gradually over a three-year period. At that time, company officials designed a separation package for the Greenville employees which entitled them to one week's pay for each year of service with the company (known as a "one-for-one" package, or "single separation pay"). The plan also included various other benefits and is referred to as the "Greenville Plan."
 
 
 3
 The company immediately communicated the "Greenville Plan" to all of the Greenville employees (including plaintiffs). From January, 1986, through the plant closing in March of 1988, the employees were gradually dismissed and paid their benefit entitlements under the Greenville plan. All of the plaintiffs have thus received at least single separation pay.
 
 
 4
 During the early stages of the Greenville shutdown, in an entirely unrelated matter, Celanese began to explore the possibility of a corporate merger with another company, American Hoechst Corp. ("Hoechst"). On October 29, 1986, the companies agreed in principle that they would merge. Since Celanese's next scheduled Board of Directors meeting was on November 2, the parties worked diligently to draft a Merger Agreement for the Board's consideration. The agreement was adopted by the Celanese Board at this meeting.
 
 
 5
 The agreement included a clause which provided that any Celanese employee who was thereafter terminated as a result of the merger would receive added severance benefits. This clause[1] stated that any employee "whose employment is hereafter terminated by Buyer [Hoechst]" would receive severance pay equal to two weeks of pay for each year of service (a "two-for-one" package, or "double separation pay"). The Merger Agreement did not address the Greenville plant, which was already well into the process of shutting down, or the Greenville employees, some of whom had already been terminated and the rest of whom were gradually being severed from the company.
 
 
 6
 Two other portions of the Merger Agreement are of import to this appeal. One clause[2] stated that the Merger Agreement was not subject to amendment (the "non-amendment clause"). Another provision[3] stated that any beneficiary under the Merger Agreement was entitled to enforce the agreement against the company (the "enforcement clause").
 
 
 7
 Before the merger became effective, the parties amended the agreement through a document entitled "Amendment to Agreement of Merger." The amendment made certain clarifications in the original agreement. In particular, the amendment clarified the parties' intent regarding the Greenville plant and its employees. The amendment stated that the Greenville employees were not included as "hereafter terminated" employees, and thus were not beneficiaries of the Merger Agreement's provision for double separation pay.
 
 
 8
 On February 27, 1987, Celanese and Hoechst merged into the "Hoechst Celanese Corporation."
 
 II.
 
 9
 The plaintiffs brought suit, claiming that those Greenville plant employees who were terminated after the effective date of the Merger Agreement are "hereafter terminated" employees under the provisions of the agreement and are thus entitled to double separation pay. Their argument is that since the Greenville employees were not specifically excluded from the original draft of the agreement, they are covered as "hereafter terminated" employees regardless of when the decision to close their plant or to terminate their employment was made. Accordingly, the entitlement to this separation pay would vest upon the execution of the original Merger Agreement. They also assert that their rights to these benefits were irrevocable, by virtue of the nonamendment clause.
 
 
 10
 In the alternative, the plaintiffs claim that their right to double separation pay is protected under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"). They assert that their entitlements arose under the original draft of the Merger Agreement, that these rights were employee benefits and, as such, that the benefits were entitled to plan status and the accompanying protections and guarantees of ERISA.
 
 
 11
 The district court granted summary judgment for the defendant. The court held that the Merger Agreement did not expressly cover the Greenville employees and that the other terms of the agreement, as well as the surrounding circumstances, made it clear that the parties did not intend to provide new benefits for those employees who were already being terminated and who were governed by preexisting separation benefits.
 
 
 12
 With regard to plaintiffs' ERISA claims, the court held that even if the Merger Agreement was an employee benefit plan, the potential benefits under this plan were not vested and were therefore subject to elimination or amendment.
 
 III.
 
 13
 The plaintiffs, on appeal, challenge the trial court's interpretation of the Merger Agreement and claim that they should receive double separation pay since they were terminated after the date of the agreement.
 
 
 14
 The relevant section of the Merger Agreement, 7.7(h), states that double separation pay was intended for those employees "hereafter terminated." Although the entire Merger Agreement relates to the companies' merger, the sentence giving double separation pay to "hereafter terminated" employees does not explicitly state that the termination must relate to the merger. Appellants assert that this sentence must be enforced in its broadest possible terms, and that the parties' failure to specifically include reference to the merger in this sentence necessitates giving double separation pay to all Hoechst employees in every division. Appellants thus argue that all employees terminated after the date of the agreement, including those whose termination had no connection with the merger, must be paid double the normal separation benefits.
 
 
 15
 In interpreting a contract, each individual provision should be given a meaning that allows the entire contract to be given effect. Such an interpretation is clearly superior to one that gives a particular sentence a meaning that puts it at odds with the rest of the contract. See Island Creek Coal Co. v. Lake Shore Inc., 832 F.2d 274, 277 (4th Cir.1987). "[The] universal rule of contract law [is] that, in construing language in a contract, 'an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless....' (citing United States v. Johnson Controls, Inc., 713 F.2d 1541, 1555 (Fed.Cir.1983)); see also Union Inv. Co. v. Fidelity & Deposit Co. of Ind., 549 F.2d 1107, 1110 (6th Cir.1977).
 
 
 16
 Plaintiffs' interpretation of the "hereafter terminated" clause must therefore be rejected, as it is inconsistent with the other provisions of the contract. Just prior to the provision relied upon by plaintiffs, the agreement in Section 7.7(b) recognized that "certain plans, programs, arrangements, policies and practices of the Company" were being modified. Several employee benefit plans were listed. The Greenville plan was not included on the list. Thus, the benefits package under which the Greenville employees were covered--which included single rather than double separation pay--was not intended to be amended by the Merger Agreement.
 
 
 17
 Additionally, in the next section, 7.7(c), the parties agreed that the surviving corporation would maintain the existing Celanese benefit plans at least at the level already in force. If plaintiffs' interpretation of the "hereafter terminated" clause is accepted, then Section 7.7(c) loses its meaning. If "hereafter terminated" employees were to mean all employees who were thereafter severed from employment, rather than simply those caused by the merger, there would be no need to provide that existing employee benefit plans could not be reduced.
 
 
 18
 Instead, a careful reading of these provisions and an examination of their relationship to each other, leads to the conclusion that the Merger Agreement was never intended to modify or supersede the existing Greenville benefit plan. As the trial court found, the agreement was meant to apply solely to those employees who "hereafter" were terminated by the surviving corporation as a result of the merger, and not as a result of a prior business decision to close the Greenville plant.
 
 
 19
 In addition to the Merger Agreement, the later Amendment also validly showed that the Greenville employees were not to be affected by the merger. The parties, Celanese and American Hoechst, had the right to clarify their intent in such a way that was consistent with the original provisions of the Merger Agreement. The clarification is not in conflict with the original express language of the agreement; it simply supplements it to make clear the previous ambiguity in the original agreement. Since the clarification is consistent with a permissible reading of the original agreement, it does not materially alter the terms of the original agreement.
 
 
 20
 The original unamended Merger Agreement, as well as the later clarifications, each independently lead to the same conclusion: the appellants were not included within the scope of the agreement, and are not entitled to added separation benefits.
 
 IV.
 
 21
 Appellants also contend that the court improperly looked to extrinsic evidence to determine the intent of the parties, when it should have simply enforced the unambiguous terms expressed by the face of the contract.
 
 
 22
 A review of the district court's Order indicates that the court did not, in fact, base its ruling on extrinsic evidence. The Order clearly interprets the Merger Agreement only on the basis of the agreement's own terms. After doing so, the court stated that "out of an abundance of caution" it would also examine the extrinsic evidence to ensure that this did not vary its ruling. An analysis of the extrinsic evidence was then made, with the result being the same: the contracting parties did not intend to include the Greenville employees as beneficiaries of the Merger Agreement.
 
 V.
 
 23
 Appellants' final argument is that the Merger Agreement constituted an employee benefit plan under ERISA, that the Greenville employees were covered under this plan, and that the benefits under the plan vested immediately. The court held that even if the agreement was an ERISA plan covering the appellants, that the employees' benefits had not yet vested and were thus still subject to later amendment or elimination.
 
 
 24
 ERISA categorizes employee benefit plans into two types: "employee welfare benefit plans" and "employee pension benefit plans." 29 U.S.C. § 1002(2) & 1002(3). Plaintiffs concede that if the Agreement was an ERISA plan, it was a welfare benefit plan.
 
 
 25
 While both types of plans are subject to ERISA's reporting and disclosure requirements, 29 U.S.C. §§ 1021-31, and its fiduciary standards for management of plan assets, 29 U.S.C. §§ 1101-1114, welfare benefit plans are not subject to ERISA's strict standards regarding vesting, participation and funding which are imposed on pension plans. Holland v. Burlington Industries, Inc., 772 F.2d 1140, 1145 (4th Cir.1985), summarily aff'd sub nom. Brooks v. Burlington Industries, Inc., 477 U.S. 901 (1986); In re White Farm Equipment Co., 788 F.2d 1186 (6th Cir.1986); West v. Greyhound Corp., 813 F.2d 951 (9th Cir.1987). Accordingly, any severance benefits given by the Merger Agreement were unaccrued and had not vested under ERISA. Sejman v. Warner-Lambert Co., Inc., 889 F.2d 1346 (4th Cir.1989); Sutton v. Weirton Steel Div. of National Steel Corp., 724 F.2d 406 (4th Cir.1983), cert. denied, 467 U.S. 1205 (1984); Accord, Viggiano v. Shenango China Div. of Anchor Hocking Corp., 750 F.2d 276 (3d Cir.1984).
 
 
 26
 When severance benefits are contingent and unaccrued, an employer may unilaterally amend or eliminate the benefits plan without violating ERISA. Sejman, 889 F.2d at 1348-49 (citing Young v. Standard Oil (Indiana), 849 F.2d 1039, 1045 (7th Cir.1988)).
 
 
 27
 An employer is therefore free to alter or eliminate severance benefits (which are usually solely funded by the employer) without consideration of the employees' interests. In short an employer does not owe its employees a fiduciary duty when it amends or abolishes a severance benefit plan. Young, 849 F.2d at 1045.
 
 
 28
 Accordingly, the contracting parties were free to alter or eliminate any severance benefits which the Merger Agreement conferred on the appellants. The companies did, in fact, eliminate these benefits through the "Amendment to Agreement of Merger."
 
 VI.
 
 29
 Appellants have raised other challenges which we have reviewed and find meritless. For the foregoing reasons, the summary judgment against all of appellants' claims is
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 Section 7.7(h)
 
 
 [2]
 Section 9.3
 
 
 [3]
 Section 10.6